STATE EX REL. HOWE, Respondent, vs. LEE, County Clerk, Appellant.

*June 5—October 19, 1920.*

*Taxation: Certiorari to review assessment of income-tax board: Measure of profits on sale of corporate stock: Dividend stock: Basis for determining profits: Evidence: Appraisals: Property received in exchange.*

1. Upon *certiorari* to review the assessment of an income tax the presumption is that the decision of the board of review is correct; and if upon any reasonable view of the evidence it will support the decision it cannot be disturbed, for the weight or credibility of the evidence cannot be reviewed.
2. The excess of the selling price of corporate stock over its value January 1, 1911, would measure the profit subject to an income tax to the corporation, or to the stockholders thereof

where the corporation paid no income tax thereon; and relator, a stockholder, would be required to pay such proportion of the total tax as his shares bear to the total shares.

3. Where the market value of corporate assets on January 1, 1911, was the par value of its stock, and additional stock issued by the company was dividend stock, issued out of profits, going to swell the value of its corporate assets, of which the stockholder relator received his due share, this, together with his other stock, represented his proportionate share of the corporate assets for the purpose of estimating income tax.

4. The actual and not the book value of corporate stock governs for income-tax purposes, and the amount of the corporate debt, if any, should be added to the market value of the stock to ascertain the value of corporate assets; and in the absence of debt the market value of the stock measures the value of the corporate assets, or at least is competent evidence thereof.

5. In a proceeding to assess income tax of a corporate stockholder, the fact that such holder on a sworn appraisal fixed the value at eighty per cent. in 1909 and that another stockholder had appraised stock in the estate of a director of the corporation at par in 1911, in the absence of corporate debt is *held* admissible evidence to show that the stock was of par value on January 1, 1911.

6. In case of a sale of corporate stock partly for cash and partly for other corporate stock, if the property exchanged is valued at a price substantially corresponding to its market value, such price will govern in fixing the stockholder's income-tax assessment, where there is no contrary evidence of value.

7. Where a stockholder paid no more than par for any of his stock, the fact that he bought some after January 1, 1911, when the stock was at par, is immaterial, because its increase from the time of purchase to the time of sale would be measured by the excess of the sale price over par in fixing his income-tax assessment.

8. In determining the income from profits on sale of corporate assets, the fact that stock dividends represented shares in the company sold is immaterial where the par value of such shares was deducted and the income tax on only the excess sale price was imposed, no income tax thereon having been paid either by the corporation or the relator stockholder.

APPEAL from a judgment of the circuit court for Rock county: GEORGE GRIMM, Circuit Judge.   *Reversed.*

*Certiorari* to review relator's income assessment for the year 1918 made by the Rock county board of review of in-

come taxes and approved on appeal by the tax commission. The relator returned his income for 1918 and the assessor added thereto the sum of $242,249, claimed to be profits made by the relator resulting from a sale to the General Motors Corporation about July 1, 1918, of the corporate assets of the Janesville Machine Company, of which relator was a stockholder. The assessor and the board of review found the value of the corporate assets of the Janesville Machine Company on January 1, 1911, to be equal to the par value of its stock. They were sold for 300 per cent. less a small sale charge of three and one-third per cent.

The circuit court reversed the assessment and sent the case back for a reassessment because it appeared that the relator received part cash and part preferred stock in the General Motors Corporation for his share of the corporate assets and that the value of the preferred stock could not be assessed as income until it was turned into cash, and for other reasons not necessary to state. The defendant appealed from an order denying the motion to quash the writ, and from the judgment, and the relator, pursuant to sec. 3049a, Stats. 1919, served notice to review the judgment, which directs how the reassessment should be made, claiming that he is not subject to the increased tax.

For the appellant there was a brief by the *Attorney General, E. E. Brossard,* assistant attorney general, and *S. G. Dunwiddie,* district attorney of Rock county, and oral argument by *Mr. Brossard.*

For the respondent there was a brief by *Jeffris, Mouat, Oestreich, Avery & Wood* of Janesville, and oral argument by *Otto A. Oestreich.*

The following opinions were filed July 3, 1920:

VINJE, J.  Since the oral argument occurred defendant has filed with the clerk a written notice that he waives his appeal from the order denying his motion to quash the writ and asks that the case be considered upon the merits.

So considered the question is: Was there any competent, credible evidence to sustain the finding of the board of review that the value of the corporate assets of the Janesville Machine Company on January 1, 1911, when the income tax law went into effect, was equal to the par value of its stock?

Upon *certiorari* the presumption is that the decision of the board of review is correct, and if upon any reasonable view of the evidence it will support such decision it cannot be disturbed, for the weight or credibility of the evidence cannot be reviewed. *State ex rel. Spritka v. Parsons,* 153 Wis. 20, 139 N. W. 825; *State ex rel. Althen v. Klein,* 157 Wis. 308 (147 N. W. 373), and cases cited on p. 312.

It is a verity that the corporate assets sold for $1,000,000 cash and $1,250,000 in preferred stock of the General Motors Corporation in July, 1918. The excess of selling price, if any, over their value January 1, 1911, would measure the profit subject to an income tax to the corporation, or to the stockholders thereof if the corporation paid no income tax thereon, which it is conceded it did not in this case. The relator would be required to pay such proportion of the total tax as his shares bear to the total shares of stock. The authorized capital stock of the Janesville Machine Company on January 1, 1911, was $500,000. In August, 1915, this was increased to $750,000. By a contract entered into between the stockholders and the General Motors Corporation in May, 1918, it was agreed that a new corporation known as the "Janesville Machine Company" should be formed, having a capital of $1,000,000 common stock and $1,250,000 preferred stock; that the new company should buy or absorb the old, and that the General Motors Corporation should buy or absorb the new company, paying therefor $1,000,000 in cash and $1,250,000 in its own preferred stock at par. This was done. The old company was dissolved. At any rate the result of the transaction was that the General Motors Corporation received

all the corporate assets of the Janesville Machine Company, paying therefor 300 per cent. of its par value less three and one-third per cent. expense for the sale, and that the Janesville Machine Company was dissolved and ceased to exist. The difference between the par value of relator's shares and what he received for them in cash and preferred stock at par, less expenses of sale, was $242,299, which was the amount added to his income tax return. If the value of the corporate assets of the Janesville Machine Company on January 1, 1911, was equal to the par value of its shares of stock, then the action of the board was correct, for it appears that all additional stock issued by the company since that date was dividend stock issued out of profits and going to swell the value of its corporate assets. Of such dividend stock the relator received his due share, and it together with his other stock represented his proportionate share in the corporate assets.

There is testimony on the part of the relator to the effect that by reason of an undervaluation of the plant of the Janesville Machine Company, of its patents, good will, etc., the true value of the corporate assets was not shown by its book value, and that its true value was as great in 1911 as it was when sold in 1918 and was equal to the price it sold for. Hence there was no profit. Of course the actual and not the book value governs for taxing purposes. *Doyle v. Mitchell Bros. Co.* 247 U. S. 179, 38 Sup. Ct. 467, 62 Lawy. Ed. 1054. On the other hand, there was undisputed evidence that the stock of the Janesville Machine Company had never sold above par; that the relator, who was then president of the Janesville Machine Company, on December 2, 1909, acting as an appraiser in an estate of a stockholder, swore it was worth only eighty per cent. In October, 1911, in another estate, a director and stockholder appraised the value of the stock at par, and testified that there probably was no difference between the value of the stock in October, 1911, and January 1, 1911. Such evidence was competent

upon the question of the value of the corporate assets, and from it the assessor and board of review could find that the par value of the stock represented the par value of the corporate assets. It is not shown that the Janesville Machine Company was indebted at this time. Had it been, the amount of the debt would have to be added to the market value of the stock to ascertain the value of the corporate assets. In the absence of a debt the market value of the stock measures the value of the corporate assets—at least it is competent evidence thereof. Being competent evidence of their value, the finding of the assessor and board of review cannot be successfully challenged on *certiorari*. *State ex rel. Althen v. Klein,* 157 Wis. 308, 147 N. W. 373.

In the case of the sale of the property, the fact that other property is taken in part payment does not change the rule as to profits subject to an income tax. If the property taken in exchange is valued at a price that substantially corresponds to its market value, such agreed price will govern. If it be not valued, then its market value will control. Here there is no evidence to show that General Motors Corporation preferred stock was worth less than par, and for the purpose of income taxation it will, in the absence of other evidence, be deemed worth par. Hence the sale for taxing purposes is equivalent to a cash sale.

At the time of the sale the relator held 1,239 shares of stock. The evidence shows they had cost him par or less. They were valued at par as of January 1, 1911. Since he paid no more than par for any of his stock, the fact that he bought some after January 1, 1911, is immaterial, because its increase in value from the time of purchase to the time of sale would be measured by the excess of the sale price over par. For his share of the corporate assets he received $162,699 in cash and $206,500 in preferred stock, in all $369,199. Subtracting $123,900, the par value of his stock as of January 1, 1911, leaves $245,299. His assessment was

increased only $242,299; presumably the other $3,000 was his share of the expenses of the sale.

The case presents no question of taxing stock dividends. The corporate assets of the Janesville Machine Company were sold to the General Motors Corporation for a fixed sum. The fact that stock dividends represented shares in the company sold is immaterial. The par value of such shares was deducted and an income tax on only the excess sale price was imposed. Such excess sale price had never paid an income tax, either by the corporation or the relator. As stated by counsel for the relator on the oral argument, the only question on the merits of the case is, How much more, if any, were the corporate assets of the Janesville Machine Company sold for in 1918 than they were worth on January 1, 1911? The assessor and board of review found they were sold for $242,299 more than their value on January 1, 1911, and for reasons already stated such finding cannot be disturbed on *certiorari*.

*By the Court.*—Judgment reversed, and cause remanded with directions to affirm the action of the assessor and board of review.

ROSENBERRY, J. (*concurring*). I concur in the result in this case for the following reasons: The entire corporate assets of the Janesville Machine Company were sold to the General Motors Company for a fixed sum. From the sale price was deducted the value of its capital assets. The difference represents the profit derived by the company from the sale. In the manner and by the means described in the statement of facts, the assets of the Janesville Machine Company were distributed to its stockholders, including capital assets and profit in the hands of the company. The corporation paid no income tax upon its profits thus distributed, and they are therefore subject to taxation in the hands of the stockholders, being in effect a distribution of profits, and therefore a dividend and taxable as

such under the doctrine laid down in *Van Dyke v. Milwaukee,* 159 Wis. 460, 150 N. W. 509.

The following opinion was filed October 19, 1920:

PER CURIAM. A reading of the brief of relator on a motion to change the mandate from an affirmance of the assessment to one requiring a reassessment convinces us that the mandate as entered was probably erroneous because the facts necessary to determine the true tax due on the basis determined by this court were probably not all shown on the hearing. If so, it was not the fault of the relator, and he should therefore be given an opportunity to show the true facts as he claims they exist. For such purpose neither party is concluded by the evidence already introduced. Both may produce such further evidence as they may be advised.

The mandate is modified to read: Judgment reversed, and cause remanded for a reassessment of the tax upon the basis indicated in the opinion.