STATE EX REL. WALDHEIM & COMPANY, INC., Appellant, vs. WISCONSIN TAX COMMISSION, Respondent.

*April 11—October 12, 1925.*

*Income taxes: Sales of furniture on instalment plan: Report on accrual basis: Power of tax commission to require: What constitutes income: Deferred profits.*

1. The state tax commission, in requiring a furniture company selling goods on the instalment plan and previously permitted to make its income tax return on an instalment basis, to make such report on an accrual basis, acted within its powers under sec. 71.22, Stats., the statutes granting power to various boards and commissions to administer the laws of the state being given a liberal construction to effectuate their purposes. p. 542.

2. The word "income," in the Income Tax Act, is used in its common, ordinary sense, and means the profit or gain derived from capital or labor, or from both combined, including all sums which are outstanding and due at the end of the calendar year. Income is money, or that which is convertible into money. p. 543.

3. Sales made on the instalment plan and secured by conditional sales contracts should, under sub. (3) (a), sec. 71.02, Stats., be included in an income tax report, such inclusion not working an injustice, in view of sub. (3), sec. 71.03, permitting the deduction of losses. p. 544.

    VINJE, C. J., and JONES, J., dissent.

APPEAL from a judgment of the circuit court for Dane county: E. RAY STEVENS, Circuit Judge. *Affirmed.*

Action was commenced by *certiorari* to the *Tax Commission* to review the action of the *Commission* in assessing the income tax of the appellant in 1923. The circuit court affirmed the assessment of the *Commission* and dismissed the action.

The contentions of the appellant and respondent are well stated by the *Commission* in its decision, as follows:

"The appellant is engaged in the retail mercantile business in the city of Milwaukee, and has been so engaged for a great many years. Its business consists in selling furniture and other house furnishings, the larger part of such sales being made on the instalment or deferred-payment plan.

"With the permission of the *Tax Commission,* given in a letter under date of October 30, 1919, which was introduced in evidence at the hearing, appellant made its income tax return for that year on what is known as the 'instalment basis,' which is neither a cash or accrual basis but partakes of both. It has continued to make its income tax returns since 1919 on the same basis. On this basis, all expenses, including purchases paid in cash or accrued during the year, are deducted from the income for that year; while the income, on the other hand, consists of a part only of cash collected during the year and no accruals.

"It seemed to the *Tax Commission* that this method of arriving at taxable income was manifestly unfair and one-sided, in that different factors were used on the income side of the return from those on the deduction side; that is, so far as the income is concerned cash receipts only were used, while on the deduction side both cash expended and liabilities accrued are used. The defendant was thereupon notified by the *Commission* that this method of reporting would no longer be permitted, and that its assessment for the year 1923 would be made on the accrual basis under the general rule. An assessment was made accordingly.

"The *Commission* finds its authority for its reversal of the former permission given to the company to report on the instalment basis in sec. 71.22 of the Statutes, which

reads: 'The *State Tax Commission* is hereby empowered to make such rules and regulations as it shall deem necessary in order to carry out foregoing provisions.' (Income Tax Law.)

"It is a general rule that mercantile concerns and all other concerns doing business on a cash and credit basis are to make their income tax returns on what is known as the accrual basis. Briefly, this means that gross income is ascertained by deducting from gross sales the inventory at the beginning of the year and goods purchased during the year, less the inventory at the end of the year. The remainder is gross profit, or income subject to certain specific deductions allowed by statute. Like other corporations doing a cash and credit business, the books of the appellant corporation reflect its true income on an accrued basis, and its income tax return may readily be made on that basis.

"The appellant, while admitting the general rule, claims that its case is exceptional, and that its taxable income should be computed on the instalment basis, and all its credit sales ignored until collected. The reason given for this unusual method of determining taxable income is that credit is given by it on the major part of its sales extending from eighteen months to two years, though part of its sales are made for cash, and the payment of others is anticipated long before due. The evidence taken on the hearing shows that the business of appellant is highly profitable; that credit is given only after a careful investigation of the financial standing and credit of the purchaser, and its losses are only nominal. Its income tax return for 1923 shows that on total sales of $839,446 the loss sustained was about four tenths of one per cent., which was probably less than the loss of the average department store or of any other business.

"Should the privilege to the appellant of being taxed on the instalment basis be longer continued, it simply means perpetuating a preference over other competing concerns whose sales are made either for credit, for cash, or for both cash and credit, by whom such privilege is neither claimed nor allowed, and that are taxed on accrued profits as well as on cash profits. As previously stated, it is to be noted that appellant does not propose to defer expenses properly applicable to the deferred profits, but proposes to deduct all pur-

chases and all other expenses each .year from the cash payment of that year, instead of applying such payments ratably against the income as collected.

"After giving the matter very careful consideration, the *Commission* finds no reason why the income of *Waldheim & Company* should be ascertained in any different manner from that of other mercantile concerns, the only difference between them being that it does a larger part of its business on the credit basis, and credits are given for longer periods, its business, however, being equally profitable and its losses no greater."

For the appellant there was a brief by *Bloodgood, Kemper & Bloodgood,* attorneys, and *Albert K. Stebbins,* of counsel, all of Milwaukee, and oral argument by *Mr. Stebbins.*

For the respondent there was a brief by the *Attorney General* and *Franklin E. Bump,* assistant attorney general, and oral argument by *Mr. Bump.*

The following opinions were filed June 22, 1925:

CROWNHART, J.    The Income Tax Act, ch. 71, Stats., required the appellant to pay an income tax on its net income.    It defines "income" to include "all profits derived from the transaction of business."    In the ascertainment of such profits the appellant was required to make a report of its business for the year to the *Tax Commission,* which *Commission* is given by law the duty of administering the act.    The *Commission* is authorized "to make such rules and regulations as it shall deem necessary in order to carry out" the provisions of the act.    Sec. 71.22, Stats.

The court has uniformly given the statutes granting power to various boards and commissions to administer the laws of the state a liberal construction to effectuate their purposes.    This must be so if such business is to be carried on efficiently.    These bodies are usually expert in dealing with the matters committed to them, and are better situated to carry out the details of administration than are the courts. The act of the *Commission* in requiring the appellant to

report its business transactions on the accrual basis was clearly within its powers.

The only question that is seriously urged is that such method does not correctly reflect the income of the appellant because of the peculiar method it has of extending credit. It sells chiefly on time, extending over eighteen months or two years, although some sales are for cash, and in some cases credit is extended for a shorter time. Payments are made on the instalment plan. Credit is secured on a conditional sales contract, under which the goods may be repossessed in case of default by the purchaser. It is appellant's contention that these charges against customers so secured do not constitute income until they have been reduced to cash. That contention cannot prevail. Modern business is very largely done on credit. Books are kept, and profits are determined from inventories and cash receipts at stated periods. In such inventories bad accounts are charged off, goods on hand are carried at their true value, and profits or losses are determined from a balancing of accounts. Manifestly, profits or losses cannot be ascertained to perfection. In the administration of the Income Tax Law, where profits of one year have been overestimated, deductions may be made in subsequent years to equalize, but uniform rules or methods must be adopted by the *Commission* in order to bring about equity and justice between the government and the taxpayers.

The trial court in his opinion correctly stated the law as follows:

"Certain fundamental rules have been established by our decisions. 'Things which are not in fact income cannot be made such by mere legislative fiat. . . . Income in its general sense need not necessarily be money. . . . It must be money or that which is convertible into money.' *Income Tax Cases,* 148 Wis. 456, 513, 134 N. W. 673, 135 N. W. 164. The meaning of the word 'income' as used in the act is the 'common, ordinary meaning' as the word is used in

every-day life. . . . In brief it may be said to be the profit or gain derived from capital or labor or from both combined. *State ex rel. Bundy v. Nygaard,* 163 Wis. 307, 310, 158 N. W. 87.

"The return of the *Tax Commission* states a fact which is so generally known that the court might take judicial notice of it were it not stated as a fact in the return. That fact is that the commonly accepted meaning of the word 'income' as used by mercantile concerns generally includes all sums which are outstanding and due the income tax payer at the end of the calendar year.

"Keeping in mind that the common, ordinary meaning of income is 'profit or gain,' it is significant that the item of income which is in question is reported by relator as 'profits.' Very clearly that is what it is. Relator has deducted its inventory at the beginning of the year and all purchases made during the year, so that nothing of capital remains in this undisputed item. It is purely and simply 'profit or gain derived from capital or labor or from both combined.'

"This profit is not money, but it may be converted into money. Such secured contracts have a value and they may be converted into money. It is not essential that they be received at the teller's window for credit on the bank balance in order that they shall be convertible into money.

"The fact that these outstanding contracts may not be paid in full does not change the rule and will not lead to any injustice being done to relator, because the percentage of loss is comparatively small and because sub. (3) of sec. 71.03 of the Statutes permits the deduction of all such losses. These unpaid instalments are not like unpaid premiums on insurance policies, because here there is a contract to pay future instalments and these instalments are secured by a conditional sales contract. Further, the statute gives the right to not only recover the balance due but all costs and expenses incurred as well.

"The return of the relator does not 'clearly reflect' the income of the relator as required by sub. (3) (a) of sec. 71.02 of the Statutes. The relator deducts from the current year's cash income the entire expense of conducting the business, including the cost of all the goods sold upon which the profit here in question was made, and then seeks to defer the payment of the tax upon the income which is derived

State ex rel. Waldheim & Co. v. Wisconsin Tax Comm. 187 Wis. 539.

from the sale of the very same goods which are deducted from the income upon which relator is to pay a tax during the year in which such goods were sold. Under such a state of facts it was clearly the duty of the *Tax Commission* to refuse to permit the return to be made on the instalment basis. Without such consent and approval on the part of the *Commission* the relator may not make a return on the instalment basis."

The method adopted by the *Tax Commission* has the support of the federal Board of Tax Appeals. *Appeal of B. B. Todd, Inc.* 1 U. S. Board of Tax Appeals Rep. 762. In speaking of instalment contracts the board said:

"To be sure, the period of collection of accounts is probably longer, losses are perhaps slightly higher; but neither of these factors, in view of the results in net profits, appears to the board to warrant special and favorable treatment of this class of taxpayers at the expense of all other classes of taxpayers reporting income on the cash or the accrual basis. If entitled to such relief, their appeal lies properly to legislative and not to administrative authority. If income is to be measured in the manner in which business men generally have found it necessary to measure it, the accrual basis is sound and necessary. Cash plays a relatively small part in modern business. The whole structure is built upon the use of credit. The balance sheet of the taxpayer here in question shows, at the close of 1918, instalment accounts receivable of $289,000, and loans, accounts, and bills payable of $190,000. Taxpayers reporting upon a credit or, in other words, upon an accrual basis are allowed to charge off the losses which they sustain on account of the non-collection of debts due them. The entire plan of income taxation recognizes the fact that income is a matter, at best, of estimate, and can never be reduced to absolutely definite terms in the case of a large modern business institution. Such being the case, and the actual basis being one of two bases clearly laid down in the statute, it is the opinion of the board that no other basis is so recognized and that no other basis may legally be adopted. This does not mean that there may not be, in the exigencies of individual cases, recognition of minor departures from the accrual or the cash basis, the adoption of minor refinements in the interest of

that elasticity necessary if the income tax under the revenue acts is to be adjusted to the idiosyncracies of individual business, but the board finds no reason for the injection of a system of computing income foreign alike to the cash receipts and disbursements and to the accrual basis."

*By the Court.*—The judgment of the circuit court is affirmed.

VINJE, C. J. (*dissenting*).  I concur in the contention of appellant as stated by the court in its opinion, that secured charges against customers do not constitute income until they have been reduced to cash.  A promise to pay does not constitute income.  I have nothing to say about the power of the *Tax Commission* to prescribe reasonable regulations for the collection of income taxes because that question is not in the case.  The question is, What is income? Manifestly the *Tax Commission* cannot make that income which was not made so by the constitution.  In popular conception a promise to pay in the future never was conceived of as income, as cash in hand or its equivalent.  Indeed, it is not so conceived of by the court in this case, for it says: "Where profits of one year have been overestimated, deductions may be made in subsequent years to equalize." This admits that promises to pay are not income, for if they were there would be nothing to equalize in subsequent years. There is no overestimating of profits if promises to pay are income, for the amount of such promises can be definitely and correctly ascertained at any time.  Given the correct amount of net income and applying to it the statutory rate, there is nothing to equalize in the future because the correct tax has been levied and collected.  The equalization the court speaks of becomes necessary only because some of the promises to pay were never paid and therefore never ripened into income.  Such equalization shows that they were not income when the tax was assessed.  The case does not present a question of bookkeeping, but of what is income within the meaning of the constitution.  There is no inherent diffi-

First Nat. Bank v. Joint School Dist. 187 Wis. 547.

culty in assessing future payments during the year they are made. Here appellant is compelled to pay an income tax on moneys not due and long before they are to become due. The interest on such advance payments of an income tax for large business enterprises is of substantial importance and cannot be recouped even under the "future equalizations" of which the court speaks. My view is that a promise to pay is not income and that neither the legislature, the *Tax Commission,* bookkeeping, nor custom can make it so.

I am authorized to state that Mr. Justice JONES concurs in this dissent.

A motion for a rehearing was denied, without costs, on October 12, 1925.