## RICHARDSON et al. v. CONWAY et al.
### No. 4465.

Circuit Court of Appeals, Seventh Circuit.
March 20, 1931.

Rehearing Denied June 10, 1931.

John B. Sanborn, Wm. J. P. Aberg, Chauncey E. Blake, and Glen H. Bell, all of Madison, Wis., for appellants.

A. L. Hougen, of Manitowoc, Wis., and John W. Reynolds, of Madison, Wis., for appellees.

Before ALSCHULER, EVANS, and SPARKS, Circuit Judges.

ALSCHULER, Circuit Judge.

Appellant Jessie P. Richardson, residing in Wisconsin, and owning all the outstanding shares of the Waupaca Electric Service & Railway Company, a Wisconsin public utility corporation, on December 10, 1925, entered into an agreement in writing with the Wisconsin Valley Company reciting sale and transfer to the latter of 101 shares of the stock for a paid consideration of $36,791.27, and agreeing to sell to the Wisconsin Valley Company, and the latter agreeing to buy, the remaining 400 shares in eight blocks, each of 50 shares, the first on May 19, 1926, and the others at intervals of six months thereafter, on payment to appellants of $18,213.50 for each block delivered. The parts of the contract here material are quoted in the margin.[1] The Wisconsin taxing authorities, treating the transaction as completed in 1925, assessed as income for that year, for state income tax purposes, the profit to appellant on the entire 501 shares.

Appellants, having removed from the state, brought suit in the federal District Court to restrain certification of the tax on such of the income as is represented by the profit upon the 400 shares. An answer was filed, and each party moved for decree on bill and answer. The court decreed dismissal on the merits.

The sole question is whether, as to the 400 shares, the profit to appellant thereon was income taxable in 1925 for state income tax.

If decisions of the Supreme Court of Wisconsin construing the statue have application to the question here, we must adopt such construction. In State ex rel. Waldheim & Co. v. Wis. Tax Comm., 187 Wis. 539, 204 N. W. 481, 482, it was held that the entire profits on installment contracts were taxable in the year when the contract was entered into. It was stated:

"This profit is not money, but it may be converted into money. Such secured contracts have a value and they may be converted into money. It is not essential that they be received at the teller's window for credit on the bank balance in order that they shall be convertible into money."

To like general effect is Motors Acceptance Co. v. Wis. Tax Comm., 193 Wis. 41, 214 N. W. 64, 65, where the court said:

"Income for the purposes of taxation need not be money which can be passed through the teller's window or profits which can be distributed to stockholders in cash. Income may be either money or that which is convertible into money. Income Tax Cases, 148 Wis. 456, [513, 134 N. W. 673, 135 N. W. 164]."

While this is not an installment contract as that term is generally understood, and as

[1] "That the said party of the first part has sold, assigned, conveyed, transferred and set over and by these presents does sell, assign, convey. transfer and set over to the said party of the second part for the consideration of Thirty-six Thousand Seven Hundred Ninety-one Dollars and twenty-seven cents ($36,791.27), payment of which sum by second party to first party is hereby confessed and acknowledged, one hundred and one (101) shares of the common capital stock of the Waupaca Electric Service & Railway Company, a corporation with its principal office at the City of Waupaca in Waupaca County, Wisconsin;

"And said party of the first part does hereby promise, covenant and agree to and with second party to sell, assign and convey to the said party of the second part, and said party of the second part does hereby promise and agree to purchase, receive and pay for to the first party four hundred (400) additional shares of the common capital stock in the Waupaca Electric Service & Railway Company for the sale and purchase prices and at the times and in the manner hereinafter particularly stated, to wit:

50 shares on the 19th day of May A. D. 1926 $18,213 50
50 shares on the 19th day of Nov. A. D. 1926 18,213 50
50 shares on the 19th day of May A. D. 1927 18,213 50
50 shares on the 19th day of Nov. A. D. 1927 18,213 50
50 shares on the 19th day of May A. D. 1928 18,213 50
50 shares on the 19th day of Nov. A. D. 1928 18,213 50
50 shares on the 19th day of May A. D. 1929 18,213 50
50 shares on the 19th day of Nov. A. D. 1929 18,213 50

"Said party of the first part hereby covenants and agrees with the said party of the second part that the said four hundred (400) shares of stock to be hereafter delivered to second party and paid for as herein stated shall be delivered to and left with the Minnesota Loan & Trust Company of Minneapolis, in Hennepin County, Minnesota, in escrow, and hereby authorizes and empowers the said Minnesota Loan & Trust Company to deliver said stock to second party in installments as aforesaid as paid for by said party of the second part, such payments to be made at the home office of said company at Minneapolis, Minnesota; and no shares of said stock to be delivered to the second party except in installments of fifty (50) shares each and no install-ment of fifty (50) shares shall be delivered until such installment has been fully paid for. Said party of the second part further promises and agrees with the said party of the first part to pay semi-annually to first party at the times the said several installments of stock are delivered and paid for respectively, interest upon the unpaid portion of the purchase price of the said four hundred (400) shares of stock at the rate of six per cent (6%) per annum."

"Said party of the first part hereby grants to the said party of the second part the right to vote all the said stock; to-wit, said four hundred (400) shares, at any and all corporate meetings, and at all times after the date hereof; provided, however, that such voting power shall be suspended at any time and revert to the first party when and so long as the second party shall be in default in any of the terms and conditions of this contract on its part to be performed."

was the fact in some of the adjudicated cases, we can see no logical reason why the principle announced in the above cases is not here applicable. The contract here is, in a sense, one embodiment of a series of contracts for periodic sale, purchase, and delivery of a specific number of shares at a definite price to be paid at specific times. As to the 101 shares, the contract recites the payment of the price and the delivery. Then follow provisions for the sale and purchase of eight blocks of 50 shares each, at the fixed price, and for delivery of the stock certificates in escrow, to be paid for by the purchaser and taken by it as agreed, and for interest on deferred payments at 6 per cent. per annum from date of contract.

It appears from the pleadings that the certificates of stock were delivered to the escrow, and contemporaneously with the execution of the contract all the property and assets of the Waupaca Company were turned over to the Wisconsin Company, and that the latter concern was abundantly able to meet the contract obligations on its part to be performed.

As in installment contracts generally, there was here no independent security or notes to manifest or secure the maturing payments. But the property of the Waupaca Company which thus passed to the buyer, and which presumably had value which bore a fair relation to the purchase price of the entire corporate stock, augmented the already abundant responsibility of the purchaser, although no specific lien was granted appellant save that the property of a corporation, is primarily liable for its obligations. It may be said that the vendor's security afforded by the escrow arrangement would, in general, be better than in a conditional sale installment contract where possession of the article sold goes to the vendee, with title remaining in the vendor until all payments have been made.

In State ex rel. Howe v. Lee, 172 Wis. 381, 178 N. W. 471, 473, certain stocks taken in exchange for other property were included in estimating the profits of the transaction, which the taxpayer contended could not be considered until realized upon. The court said:

"In the case of the sale of the property, the fact that other property is taken in part payment does not change the rule as to profits subject to an income tax. If the property taken in exchange is valued at a price that substantially corresponds to its market value, such agreed price will govern. If it be not

valued, then its market value will control. Here there is no evidence to show that General Motors Corporation preferred stock was worth less than par, and for the purpose of income taxation it will, in the absence of other evidence, be deemed worth par. Hence the sale for taxing purposes is equivalent to a cash sale."

If this contract, whereby the Wisconsin Company unqualifiedly bound itself to make the specified payments, had a definite realizable value, we are satisfied that under the law of Wisconsin the profit upon the transaction was taxable income in 1925.

The tax commission found, in substance, that the purchaser was responsible, and that the contract would have been convertible into cash by appellant, and that the transaction was in essence the same as if the cash had been paid appellant in 1925 and invested elsewhere at 6 per cent. interest.

There is nothing in the record which conflicts with these findings of the tax commission, and its findings of fact are presumably correct. Peninsular Power Co. v. Wis. Tax. Comm., 195 Wis. 231, 218 N. W. 371; State ex rel. Howe v. Lee, 172 Wis. 381, 178 N. W. 471; Niles Bement Pond Co. v. United States, 281 U. S. 357, 50 S. Ct. 251, 74 L. Ed. 901.

The decree of the District Court is affirmed.