WISCONSIN ORNAMENTAL IRON & BRONZE COMPANY, Appellant, vs. WISCONSIN TAX COMMISSION, Respondent.

*February 5—March 4, 1930.*
*October 18—November 11, 1930.*

For the appellant there was a brief signed by *Upham, Black, Russell & Richardson,* and oral argument by *Perry J. Stearns* and *Fred Sammond,* all of Milwaukee.

For the respondent there was a brief signed by the *Attorney General* and *Theo. W. Brazeau* of Wisconsin Rapids, special counsel for the Tax Commission (*Leo J. Federer* of Madison of counsel), and oral argument by *Mr. Brazeau.*

A brief was also filed by *Miller, Mack & Fairchild* of Milwaukee as *amici curiæ.*

The following opinion was filed March 4, 1930:

OWEN, J. The Wisconsin Tax Commission made a field audit of the books of the Wisconsin Ornamental Iron & Bronze Company, hereinafter called the Taxpayer, for the

years 1921 to 1927, both inclusive, resulting in a proposed additional assessment of income, of which notice was given to the Taxpayer, and upon objections made by it to such proposed additional income tax a hearing was had before the Tax Commission in due course, resulting in the final imposition of an additional income tax for those years.

The Taxpayer is largely engaged in the manufacture and erection of iron and bronze products for building-construction purposes. At the end of each fiscal year there are a number of contracts which are only partly completed. Under its system of accounting the Taxpayer deferred on its books all profit or loss on these contracts until they were completed. Its income tax return did not disclose any income from a contract until it was completed. Its income tax returns were made in accordance with this system of accounting to the Wisconsin Tax Commission during the years in question by and with the consent of the commission. The principal controversy here involved will be clearly revealed by some correspondence between the Tax Commission and its auditor. On January 5, 1928, the auditor wrote the Tax Commission as follows:

"*Re* Wisconsin Iron & Wire Works: Kindly give me a ruling on the following situation: The company manufactures and installs under job contracts iron and bronze fixtures. At the close of any one year there are a number of jobs in process of manufacture or installation on which no profit is computed. It is the practice to bill customers for materials shipped at the close of each month, the charge being to accounts receivable and the credit to sales. At the close of the year an analysis of the sales account is made and only those sales are closed into profit and loss which represent completed contracts, the balance remaining as a credit in the account. Likewise an inventory of the goods in process of incomplete contracts is set up regardless of whether the goods have been shipped and billed.

"It is our contention that, when parts of a job have been completed and the customer billed, and in some cases even

large amounts of payments received, a sale has been consummated and profit should be computed. Customers are billed at the close of the month for the entire amount of the shipments to date. However, the contracts allow them to withhold payment of fifteen per cent. of the building until the job is completed."

To this the Tax Commission replied as follows:

"After going over the information submitted we think you will be perfectly within your rights as well as observing correct accounting principles if you will require the company to accrue upon their books at the close of any year all portions of contracts which have already been shipped to the purchaser. We feel that there can be no question as to the fact that these sales of completed portions of a contract should properly be accrued. The withholding of fifteen per cent. of the billing price by the purchaser will in no way affect the accrual of this item. It might be possible that the goods in process which is being manufactured on contract. or order but which is still in the company's possession and in the process of manufacture might be accrued, at least a portion thereof, during the year, but we believe it would be best to let this particular item remain as goods in process inventory, and to accrue only such amounts or units as have actually been completed and have been shipped to the customer whether billed or not."

The auditor proceeded with his audit by treating as income the amount of the billings in accordance with his original suggestion, by reason of which the taxable income of the Taxpayer was increased for a six-year average by about ten per cent. The legality of the tax imposed upon this increased income affords the principal controversy we are called upon to consider.

The Taxpayer insists that its method of accounting is sanctioned by the best accounting practices, is supported by practically all accounting authority, and assails as utterly unjustifiable, and as unsupported by any recognized accounting theory, the method employed by the auditor of the Tax

Commission in arriving at the increased income contributing to the increased assessment complained of. Whether this presents a controversy calling for our determination depends upon the nature of the report which the statute requires of the taxpayer and the character of the discretion lodged with the commission to accept a modified form of such report. For a determination of this question we must consider generally the scope and purpose of the income tax act and, specifically, sec. 71.02 (3) (a), which provides:

"Persons who customarily estimate their incomes or profits on a basis other than cash receipts and disbursements may, with the consent and approval of the tax commission, return for assessment and taxation the income or profits earned during the income year, in accordance with the method of accounting regularly employed in keeping their books, except as hereinafter provided; but if no such method of accounting has been employed, or if the method used does not clearly reflect the income taxable under this chapter, the computation shall be made upon such basis and in such manner as in the opinion of the tax commission will clearly reflect such income."

From a consideration of the income tax act as a whole, the legislative purpose to impose an income tax upon annual gross income less deductions authorized by the act is clear. Any system of accounting by which the income or the profits of the taxpayer is arrived at on a basis of cash receipts and disbursements complies with the requirements of the act. A taxpayer who is able to report his income upon this basis meets with no difficulties. The legislature recognized, however, that modern scientific accounting methods do not always accommodate themselves readily to a report of income computed on such basis. No doubt a realization of this fact prompted the enactment of the statute above quoted by ch. 65, Laws of 1921. The question is, Does this create a right in the taxpayers to report their incomes in accordance with the methods of accounting regularly employed in keep-

ing their books, or is it a mere concession dependent upon the approval of the Tax Commission?

In *U. S. v. Anderson*, 269 U. S. 422, 46 Sup. Ct. 131, in which an act of Congress similar to this statute was under consideration, we find these observations:

"This section went further than any previous regulation by authorizing the tax return to be made on the basis on which the taxpayer's books were kept, provided only that the basis was one reflecting income and the return complied with regulations made by the commissioner. . . . It was to enable taxpayers to keep their books and make their returns according to scientific accounting principles, by charging against income earned during the taxable period the expenses incurred in and properly attributable to the process of earning income during that period; and indeed, to require the tax return to be made on that basis, if the taxpayer failed or was unable to make the return on a strict receipts and disbursements basis."

The question there under consideration was whether certain taxes were properly deductible from the income of 1917, during which year the taxes were paid, or whether they were deductible, in accordance with the regulations of the commissioner, from the income of 1916, during which year they accrued. It was held that the regulation of the commissioner requiring their deduction from the income of 1916, during which year the taxes accrued, was in accordance with the statute. While the question there involved was not identical with the one here presented, nevertheless we gather from the opinion that the court was of the view that an exact compliance with the income tax act required a report made upon the basis of cash receipts and disbursements, and that where the report was made upon any other basis it must clearly reflect income and the return must comply with regulations made by the commissioner.

The opening phrase of the statute above quoted reflects the legislative thought that an exact compliance with the

income tax act requires a report made upon the basis of cash receipts and disbursements. It also seems to recognize that many taxpayers do not estimate their incomes or profits on that basis. It then authorizes them to make a return of the income or profits earned during the income year according to the method of accounting regularly employed in keeping their books. This, however, can only be done with the consent and approval of the Tax Commission. Neither can it be done if the method used "does not clearly reflect the income taxable under this chapter." It seems plain that the basic requirement of the law is a report of income based upon the cash receipts and disbursements. To report upon any other basis is not the right of the taxpayer, but is a mere concession conditional upon the approval of the Tax Commission, and further conditional that it shall "clearly reflect the income taxable under this chapter."

Here the Taxpayer has no absolute right to continue to make its return of income in its customary manner. In the first place, it is exceedingly doubtful whether that method clearly reflects its income taxable under the act. Whether the method reflects the "average net income" now required we do not pause to consider. But that under the prior provision of the act it did not reflect the income received during any one year seems certain. But whether it does or not, its return cannot be made in the manner followed by the Taxpayer in the absence of the approval of the commission, because it is not upon the basis of cash receipts and disbursements. It therefore seems unnecessary for us to consider the various objections which the Taxpayer makes to the method employed by the field auditor in making the additional assessment. As it does not customarily estimate its income or profits on the basis of cash receipts and disbursements, it must submit to a computation upon such basis and in such manner as in the opinion of the Tax Commission

will clearly reflect such income. There is no escape from this conclusion so far as it relates to the future income tax.

Whether that portion of the additional assessments growing out of the application of the method adopted by the auditor should be permitted to stand, involves a further consideration.

It was held in *State ex rel. Schuster Realty Co. v. Wis. Tax Comm.* 184 Wis. 175, 197 N. W. 585, 199 N. W. 48, that an assessment made upon a return showing all the facts was final and conclusive, and that an additional tax could not be levied because the commission had arrived at a different conclusion concerning a proper rate of depreciation that should be applied to property the character of which was fully and clearly disclosed by the report. A contrary conclusion was reached in *Wisconsin Box Co. v. Wisconsin Tax Comm.* 198 Wis. 439, 224 N. W. 483, where the report did not reveal the manner in which the deduction taken by the taxpayer for depreciation was arrived at.

An examination of the record in this case precludes any possibility that the commission was in any manner misled or deceived in reference to the method by which the Taxpayer was reporting its income. Its accounting system, in so far as it deferred profits until the completion of a contract, clearly appears from its reports and the correspondence between the Taxpayer and the commission found in the record. We can see no difference between the situation here presented and that considered in *State ex rel. Schuster Realty Co. v. Wis. Tax Comm.* 184 Wis. 175, 197 N. W. 585, 199 N. W. 48. In that case the commission sought to apply a different rate of depreciation. In this case it seeks to substitute a different method of accounting. In so far as the increased assessment results from the application of this substituted accounting method, the assessment of the commission should be vacated and set aside.

This conclusion makes it unnecessary for us to consider whether the commission properly accumulated that portion

of the additional assessment for the years 1921–1925, inclusive, as an assessment of additional income for the year 1926, a proceeding to which the Taxpayer strenuously objects. As that portion of the additional income is wiped out, that procedure on the part of the commission becomes immaterial.

There remains to be considered one other item entering into the additional assessment to which objection is made by the Taxpayer. It appears that the Taxpayer entered into a contract with one of its stockholders for the purchase of his stock, payment therefor to be made on the instalment plan. During its reports for the years 1925, 1926, and 1927 the Taxpayer deducted from its gross income the amount of the interest paid on the deferred portion of the purchase price of this stock. The Tax Commission disallowed this deduction and included it in the taxable income of the Taxpayer for those years. Sec. 71.03 (2) authorizes deduction for "interest paid during the year in the operation of the business from which its income is derived." The Tax Commission and the trial court correctly held that this was not interest paid "in the operation of the business from which its income is derived." Nor is it a transaction from which any income will ever accrue to the state. The Taxpayer is a corporation. It is taxed upon its income. Income paid to the stockholders in the form of dividends is exempt. It matters not to the state who owns the stock. The purchase of this stock on the part of the corporation was but a mere readjustment of its internal affairs, bearing no relation whatever to its activities giving rise to income. The interest paid by it on the deferred portion of the purchase price of the stock was in no sense of the word paid "in the operation of the business from which its income is derived," and its deduction was not authorized by the statute.

*By the Court.*—Judgment reversed, and cause remanded with instructions to enter judgment vacating and setting aside that portion of the increased assessment appearing un-

der item 2 of Exhibit C of the record, and affirming the remainder of the assessment.

A dissenting opinion filed March 4, 1930, by Mr. Chief Justice ROSENBERRY was subsequently withdrawn.

Respondent moved for a rehearing.

On the motion there was a brief for the respondent by the *Attorney General, Theo. W. Brazeau* of Wisconsin Rapids, special counsel for the Tax Commission (*Leo J. Federer* of Madison of counsel), *George A. Bowman,* district attorney of Milwaukee county, and *Robert R. Freeman,* special counsel for Milwaukee county; and for the appellant there was a brief by *Upham, Black, Russell & Richardson,* attorneys, and *Perry J. Stearns* of counsel, all of Milwaukee.

Reargument was ordered June 23, 1930.

On reargument of the cause there was a brief for the appellant by *Upham, Black, Russell & Richardson,* attorneys, and *Perry J. Stearns* of counsel, and oral argument by *Mr. Stearns.*

*Theo. W. Brazeau,* special counsel for the Tax Commission (*Leo. J. Federer* of counsel), for the respondent.

A brief was also filed by *Miller, Mack & Fairchild* of Milwaukee as *amici curiæ.*

The following opinion was filed November 11, 1930:

OWEN, J. (*on reargument*). We are persuaded that our construction of sec. 71.02 (3) (a), Stats., attaches undue sanctity to income tax reports made upon the basis of cash receipts and disbursements. The imperative condition of this statute is, that any report made upon whatever basis must clearly reflect the income which the law subjects to a tax. That a report made upon the basis of cash receipts and disbursements does not necessarily reflect the true income appears from *State ex rel. Waldheim & Co. v. Wis. Tax*

*Comm.* 187 Wis. 539, 204 N. W. 481; *Motors Acceptance Co. v. Wis. Tax Comm.* 193 Wis. 41, 214 N. W. 64. The statute provides that "if *the* method used does not clearly reflect the income taxable under this chapter, the computation shall be made upon such basis and in such manner as in the opinion of the tax commission will clearly reflect such income." Some solicitude is manifested concerning the weight that is to be accorded the opinion of the Tax Commission on the question of whether a given method of reporting clearly reflects the income, and we are warned that this provision should not be construed as lodging with the Tax Commission the power of final decision or of exercising an arbitrary or capricious discretion. Probably no one would contend that the statute means any such thing. The law requires that the report shall disclose the taxable income of the taxpayer. If the report faithfully discloses that income, there is no room, occasion, or power on the part of the Tax Commission to demand any other or different report or method of reporting. However, where the report fails to disclose faithfully the amount of taxable income, the commission is then empowered to require a report upon such basis and in such manner as in its opinion will clearly reflect such income. We do not construe this as vesting the Tax Commission with capricious or arbitrary power. It cannot demand a report that will enable it to impose a tax upon income not earned by the taxpayer. The remedies afforded the taxpayer to protect himself against unjust and illegal exactions of that nature are ample. The apprehensions which taxpayers seem to entertain in this respect are in themselves rather fanciful and capricious. Let it be understood, then, that the statute requires that a report of income made upon any basis must clearly reflect the taxable income. That if the report offered does not clearly reflect the taxable income, the commission may require a report to be made upon such

basis and in such manner as in its opinion will clearly reflect such income. This power on the part of the commission cannot be used to impose an unjust or unlawful tax, and its opinion in this respect is subject to the review of the court.

We do not find it necessary to decide at this time whether the statute under consideration confers an absolute right upon taxpayers who keep their accounts upon an accrual basis to return for assessment and taxation their income or profits in accordance with such methods of accounting. Even though the plaintiff has a right to make its return in accordance with its method of accounting, it has no right to make a return which does not clearly reflect its income. We are satisfied that the return made by the plaintiff did not clearly reflect its income, for which reason the commission was authorized to compel a return upon a basis which would truly reflect its income. The question is whether the method adopted by the commission clearly reflects such income.

The business of plaintiff is substantially that of manufacturing. It manufactures and installs its products in buildings and other works of construction under long-term contracts, the completion of which extends into more than one taxpaying period. By its accounting method it takes no account of profit made on any of these contracts until they are completed, consequently it reports no income for taxation on any of its contracts until they are completed. This method of accounting and reporting income is permissible under a similar federal statute and the regulations of the Internal Revenue Department. That it is not the only proper method is indicated by the same regulations which permit the report of income arising from such contracts upon what is known as the percentage of completion basis. That the federal government is satisfied with a report made on either basis is no indication that a state should be, or that it is obliged to accept a report which postpones the return of income to a year or years succeeding the one in which it is ac-

tually earned. It is apparent that, in the long run, an income tax will be paid upon the total income under either method, unless the business is moved beyond the taxing jurisdiction before the income is reported. So far as the federal government is concerned, this is not a matter of solicitude, as the shifting of business beyond state lines does not place it outside the jurisdiction of the federal government. It is different, however, where a business moves beyond the jurisdiction of the state, as frequently happens, and has happened with reference to plaintiff's business since the imposition of the tax here under review. For this and perhaps other reasons the state is concerned with the time when income shall be reported as well as the amount thereof.

The law imposes a tax upon income for the year during which it is earned. In order that this may be accomplished, all income must be reported for the year in which it is earned. That is what the law requires and that is what the Tax Commission may insist upon. The method adopted by the Tax Commission in determining the amount of plaintiff's income subject to income tax, took the billing of its goods as a basis. Whether or not this basis has the sanction of any recognized accounting practice, it is not to be condemned if as a matter of fact it clearly reflects the income earned by the plaintiff during the year. As already stated, its business is the manufacture and installation of its products under long-term contracts. A typical provision of its contracts is that the price shall be paid "as the work progresses monthly an amount equal to eighty-five per cent. of the value of the completed work done during the preceding calendar month, provided that a requisition on a form to be supplied by contractor is delivered to contractor on the last day of the month during which the work covered thereby was done, and provided further that the unpaid balance of the price shall at all times be sufficient, in the judgment of the architect or contractor, to complete the work and to pay any unpaid liens or claims

for which subcontractor is responsible hereunder." Another provision of the contracts is as follows: "Contractor may, from time to time, and in order to expedite the work hereunder, make payments to subcontractor for materials prepared and ready for delivery. If subcontractor is paid for materials before they are delivered at the site, a bill of sale and fire insurance policies protecting contractor against loss and at option of contractor a lease upon the premises upon which material paid for is stored, all in form satisfactory to contractor, shall be furnished by subcontractor at the latter's cost." It appears that in the prosecution of these contracts the material was manufactured at plaintiff's plant, shipped to the place of installation, and at the end of the month the customer was billed for all shipments so made. The books of the company were so kept that they reflected the cost of the materials so shipped. Plaintiff's fiscal year ended October 31st, and on that date the books showed the amount that had been billed upon each contract, the cost of producing the product so billed, and the profit resulting therefrom. The record contains a schedule exhibiting that which appeared on plaintiff's books on October 31, 1927, with reference to nine incompleted contracts. From this schedule it appears that on the National Press Club contract there had been billed during the year goods to the amount of $170,000, the cost of which was $144,303.99, the profit thereon being $25,696.01, and that the final net profit resulting upon the completion of the contract was $26,055.33. The total of nine contracts showed billing on October 31, 1927, to the amount of $378,127 and cost of $306,234.66, a profit of $71,882.34 and a final net profit of $65,713.90. We cannot escape the conclusion that the profit shown on the products billed represents income earned as of that date, which the law subjects to the payment of an income tax. It represents goods sold, furnished, and delivered, a great deal of which has been paid for, and the balance of which represents profit just as clearly as did the contracts held to constitute

income in *State ex rel. Waldheim & Co. v. Wis. Tax Comm.* 187 Wis. 539, 204 N. W. 481.

A perusal of the schedule just commented upon reveals that under the system followed by the taxpayer, the report of income aggregating some $65,000 was postponed to the succeeding year. True, in some instances the profit appearing upon its books at the close of its fiscal year was greater than the profit realized when the contract was completed. But in other cases the profit was larger. The total profit on the nine contracts involving a business of $378,000 was about $6,000 less than the profit shown on its books at the close of the fiscal year. When it is reflected that this depreciation was deducted from its income for the succeeding year, we fail to perceive any considerations of justice requiring the postponement of the report of this income actually earned until the contracts were fully completed, thus affording the taxpayer the use of some $65,000 for a year. But equitable considerations do not enter into these matters. The law levies a tax upon income during the year for which it is earned. That an income was earned on the goods billed cannot be contradicted. That there will be discrepancies between the estimated profit and the final profit is to be expected. That the deductions afforded the taxpayer upon the report of income for the succeeding year gives ample and just opportunity for reconciliation, is unquestioned. The discrepancy of $6,000 upon these nine contracts involving a business of $378,000 does not indicate shocking injustice to the taxpayer. The taxpayer must either lose the interest on the tax on $6,000 for a year, or the state must lose the interest on the tax on $65,000 for a year. When it is conceded that no accrual method of accounting is correct, or will reflect the exact income eventually realized, we see no reason to impeach the method adopted by the Tax Commission. As a matter of fact, the method adopted does postpone the income earned by the appellant upon goods not billed but which were carried as "goods in process." The production of such

goods must have represented a profit which under this system plaintiff is permitted to postpone for income-tax purposes until the succeeding year. We therefore affirm our former conclusion, though based on another ground, that the method prescribed by the Tax Commission must be followed in the future reports of income.

In our former consideration of the case we assumed that an additional tax resulted from the application of this method to past income, and as to it the tax was set aside. It appears that the former opinion misinterpreted the concededly ambiguous order of the Tax Commission. As we construed that order, it assessed the deferred income for the years 1921 to 1925 by including it in the assessment for 1926. This was erroneous. No tax was levied for the deferred income for the years 1921 to 1925, inclusive. The method of the Tax Commission was applied only to the years 1926 and 1927, upon which the tax of 1928 was computed. The Tax Commission claims the right to correct the returns for 1926 and 1927 because from those returns the tax of 1928 was to be computed. Whether this be true or not, they were fully authorized by the provisions of sec. 71.10 (5), which provides that the office audit of the returns "shall not preclude the tax commission or assessor of incomes from making field audits of the books and records of the taxpayer and from making further adjustment, correction and assessment of income." This provision was enacted by ch. 539, Laws of 1927, and was in force at the time the assessment here under consideration was made. Its enactment does away with the rule announced in *State ex rel. Schuster Realty Co. v. Wis. Tax Comm.* 184 Wis. 175, 197 N. W. 585, 199 N. W. 48, and the conclusive effect there accorded to the office audit of the return. From our present consideration we find no infirmity in the assessment made by the Tax Commission, and the judgment of the circuit court confirming its action should be affirmed.

We cannot close this opinion, however, without commenting upon a statement found in the appellant's brief on rehearing, referring to a persistent rumor that since the decision of this case an employee of the Tax Commission has been in conference with a member of this court concerning this case. While we regret the imputation thus implied upon the judicial integrity of the members of this court, it probably should be said that for many years (to the writer's knowledge since 1913) it has been the practice of the members of this court to refresh their recollection upon matters of which courts take judicial notice, by calling upon any department in the State Capitol for information necessary for an intelligent understanding of matters and issues pending before the court, as well as for assistance on the part of those familiar with voluminous records in locating matters therein contained. No member of the court feels that in calling for or in accepting this assistance the proprieties of the judicial position have been infringed. If the members of this court cannot be trusted to call for or to receive such assistance, clerical in its nature, it will greatly add to the burdens of the court and unduly postpone the determination of controversies. We have no hesitancy in giving assurance that no member of this court so far forgets the judicial proprieties as to permit arguments in his presence bearing upon the merits of any controversy pending before this court. Whenever further argument upon the merits of a controversy is desired, as sometimes happens, both parties are given an opportunity to be present. The assistance thus received, though infrequent, greatly lightens the labors and expedites the business of the court. It will not be lightly dispensed with, and we trust that this assurance will quiet the apprehensions which seem to exist with reference to the judicial integrity of the members of the court.

*By the Court.*—The former mandate is vacated, and the judgment is affirmed.