PELTON STEEL CASTING COMPANY, Appellant, vs.
DEPARTMENT OF TAXATION, Respondent.

*November 10—December 7, 1954.*

For the appellant there were briefs by *Herbert C. Hirschboeck,* attorney, and *Whyte, Hirschboeck & Minahan* of counsel, and oral argument by *John L. Palmer* and *Herbert C. Hirschboeck,* all of Milwaukee.

For the respondent there was a brief by the *Attorney General* and *Harold H. Persons* and *E. Weston Wood,* assistant

attorneys general, and oral argument by *Mr. Persons* and *Mr. Wood.*

FAIRCHILD, C. J. Two of the stockholders of Pelton Steel Casting Company, owning 80 per cent of its common stock desired to sell their stock. The other stockholder, Allen Slichter, desired to continue the business under the then-existing management. He testified:

"I live in Milwaukee, Wisconsin. My occupation is president of the Pelton Steel Casting Company. I have been president of this company since 1948, and before that time had been an officer of the company since its inception on December 1, 1925. Prior thereto, I was employed by its predecessor. Pelton Steel Casting Company is a Wisconsin corporation engaged in the steel-foundry or steel-casting business. It is located on the south side of Milwaukee. When the company was formed in 1925, Arthur J. Ehne was the principal stockholder owning exactly 60 per cent of the stock. I owned 20 per cent of the stock, and Harlow Leikey owned the other 20 per cent. In 1943 Mr. Leikey sold his 20 per cent stock interest to Thomas L. Fawick. Therefore, by 1947 Mr. Ehne owned 60 per cent of the stock, Mr. Fawick owned 20 per cent and I owned 20 per cent. During the Second World War the operations of the foundry had been rather successful.

"Mr. Fawick was the vice-president of the company and he lived in Cleveland, Ohio. He was not particularly active in the business. Mr. Ehne was originally a patternmaker and lives near West Bend, Wisconsin. He was not an active foundryman. During the period up to 1947 the active management and operation was in my charge, and I held the title of secretary and general manager. There were many other persons in the organization who held responsible executive positions under me. Many of them had been employed by the company since its inception.

"These included our superintendent, Edward J. Daehn, our chief of maintenance, Stanley Lipinski, and Louis Shaw, who is our production manager and purchasing agent. In addition to these employees, there were a number of others who held responsible executive positions under me. The

persons whom I named above were employed by Pelton since its beginning and with myself, constituted the active productive management."

To meet the situation and at the same time protect his interests as well as that of others for whom he was concerned, special meetings of the board of directors and stockholders were held on May 23, 1947. At those meetings the articles of incorporation were amended to provide that—

"The capital stock of said corporation shall be $700,000 and the same shall consist of 2,000 shares of common stock each having a par value of $100 and 5,000 shares of preferred stock each having a par value of $100."

A resolution was passed by the board of directors declaring a dividend of three and one-third shares of $100 par preferred stock for each share of common stock of the owners of record of May 15, 1947. It was then resolved that the outstanding common stock of the company should be purchased with the proceeds of a loan, when and if executed, of $500,000, plus $300,000 cash on hand, as follows:

From Thomas L. Fawick, 300 shares for a
    total price of......................$175,000
From Arthur J. Ehne, 900 shares for a
    total price of...................... 625,000
                                  $800,000

The actions of the board in declaring the stock dividends and in authorizing the execution of the loan were ratified and confirmed at the stockholders' meeting. The loan, made by the Marshall & Ilsley Bank and Provident Mutual Life Insurance Company to the Pelton Steel Casting Company, was for $500,000, and paragraph 9 of the loan agreement provided:

"9. *Use of Proceeds of Loan.* The proceeds of the loans together with approximately $300,000 cash, shall be used by the company to purchase for retirement all of the outstanding

common stock of the company other than that now owned by Allen M. Slichter."

The loan agreement was executed on May 31, 1947. The common stock of Fawick and Ehne was purchased and retired, and Allen Slichter, holder of the unretired shares of common stock, was left in control of the company.

The whole result of the actions of the board of directors and stockholders was to change the ownership of the stock of the company as follows:

Before the transactions of May 31, 1947, there was only common stock, and it was held by—

| | | |
|---|---:|---|
| Arthur J. Ehne | 897 | shares |
| Allen M. Slichter | 300 | shares |
| Lillian A. Brandt (Directors' qualifying share) | 1 | share |
| Arthur J. Ehne | 1 | share |
| Thomas L. Fawick | 300 | shares |
| Malcolm K. Whyte (Directors' qualifying share) | 1 | share |
| | 1,500 | shares |

The directors' qualifying shares were retransferred to Arthur J. Ehne, and after the May 31, 1947, transactions, there was both common stock and preferred stock, which was held as follows:

*Common stock*
| | | |
|---|---:|---|
| Allen M. Slichter | 300 | shares |

*Preferred stock* ($3\frac{1}{3}$ shares for each share of common stock held as of record May 15, 1947)

| | | |
|---|---:|---|
| Arthur J. Ehne (900 shares, common stock) | 3,000 | shares |
| Allen M. Slichter (300 shares, common stock) | 1,000 | shares |
| Thomas L. Fawick (300 shares, common stock) | 1,000 | shares |
| | 5,000 | shares |

Appellant company contends that it is entitled to a deduction of the interest paid on the $500,000 borrowed by it for the purpose of purchasing the common stock held by Mr. Ehne and Mr. Fawick, and maintains that the funds were provided and retained for operation of the taxpayer's business in the years 1947, 1948, and 1949. It bases its contention on sec. 71.04 (2), Stats., which states that "interest . . . paid during the year in the operation of the business from which its income is derived" may be deducted by a corporation. Appellant also urges that the rule of the Wisconsin Department of Taxation (Rule 172 of the Wisconsin Department of Taxation in the Red Book, Wisconsin Administrative Orders, 1942 through 1950) that "Interest paid on money borrowed by a corporation to purchase its own capital stock is not deductible" does not conform to the statute.

The rule is an interpretation of the case of *Wisconsin Ornamental I. & B. Co. v. Wisconsin Tax Comm.* 202 Wis. 355, 229 N. W. 646, 233 N. W. 72, and that case is directly in point here. The rule is based on the obvious difference between a corporation borrowing money to buy material or to finance operating expenses and borrowing money to centralize control of the corporation for the direct benefit of an individual or certain individuals, and it is that difference which distinguishes the case of *Wisconsin Ornamental I. & B. Co., supra,* from *Rib Lake Lumber Co. v. Tax Comm.* 212 Wis. 412, 249 N. W. 322. Appellant argues that the latter case reverses the former. But the circumstances in the latter case were entirely different from the *Wisconsin Ornamental I. & B. Co. Case.* There the Delaware corporation issued $100,000 of its capital stock and $4,000,000 of its debentures and received in return title to $6,000,000 worth of property which was used in the operation of its business. Furthermore, no mention is made in *Rib Lake Lumber Co.*

*v. Tax Comm., supra,* of the *Wisconsin Ornamental I. & B. Co. Case, supra,* as would be the case if it were overruled.

The transactions of appellant here did not affect the earnings of the corporation so that the interest paid on the money borrowed could be deducted from the gross income. It is only "interest . . . paid during the year in the operation of the business from which its income is derived" that is deductible. Sec. 71.04 (2), Stats. The loan was made for the sole purpose of securing funds, which, together with $300,000 of other cash, should be used to purchase for retirement the Ehne and Fawick stock, and the loan agreement expressly so provides. The transaction is not one from which any income will ever accrue to the state. "The taxpayer is a corporation. It is taxed upon its income. . . . It matters not to the state who owns the stock. The purchase of this stock on the part of the corporation was but a mere readjustment of its internal affairs, bearing no relation whatever to its activities giving rise to income. The interest paid . . . was in no sense of the word paid 'in the operation of the business from which its income is derived,' and its deduction was not authorized by the statute." *Wisconsin Ornamental I. & B. Co. v. Wisconsin Tax Comm., supra* (p. 363).

*By the Court.*—Judgment affirmed.