HOFFMAN COMPANY, INC., Petitioner, v. DEPARTMENT OF
REVENUE, Respondent.

*No. 79.  Argued April 1, 1971.—Decided May 4, 1971.*
(Also reported in 186 N. W. 2d 228.)

For the petitioner there were briefs and oral argument by *Walter H. Brummund* of Appleton.

For the respondent the cause was argued by *E. Weston Wood,* assistant attorney general, with whom on the brief was *Robert W. Warren,* attorney general.

CONNOR T. HANSEN, J. The issue on this appeal is whether the commission properly determined that interest

payments by the petitioner to George Hoffman were not ordinary and necessary expenses paid by petitioner in the operation of its business from which its income is derived within the meaning of sec. 71.04 (2), Stats.

The petitioner is a Wisconsin corporation engaged in the general contracting business. In 1963, the petitioner entered into an agreement with George Hoffman, one of its shareholders, to redeem his stock. Pursuant to this agreement, the stock was surrendered immediately but payment of $60,000 was deferred over a period of years, with interest at the rate of seven percent per annum, payable on the unpaid balance.

In the fiscal years ending January 31, 1964 through 1966, the petitioner paid interest to George Hoffman, totaling $8,524.92, which it deducted for income tax purposes.

Following the hearing held before the Wisconsin Tax Appeals Commission, the commission made the following findings of fact:

"2. Prior to its incorporation on April 5, 1947, petitioner was a partnership composed of Paul Hoffman and Fred W. Hoffman, with both partners having equal shares in the partnership.

"Fred W. Hoffman died in 1947 and his share in the partnership descended one-third to his widow, Elizabeth Hoffman, one-third to his daughter, Grace Hintz, and one-third to his son, George Hoffman.

"3. At the time of petitioner's incorporation, the original stockholders with their respective shares of stock were as follows:

|  | Shares |
|---|---|
| Paul Hoffman | 300 |
| Elizabeth Hoffman | 100 |
| Grace Hintz | 100 |
| George Hoffman | 100 |

"4. In 1948 petitioner purchased the 100 shares owned by Elizabeth Hoffman for cash.

"In 1950 petitioner purchased the 100 shares owned by Grace Hintz for cash.

"In 1954 petitioner purchased 26 shares of George Hoffman's stock for cash.

"The remaining 74 shares of George Hoffman's stock were redeemed by petitioner in 1963 for a consideration of $60,000 evidenced by a note based upon the following resolution adopted by petitioner on June 25, 1963,

" *'Be it further resolved:* That the corporation redeem all of the shares now owned by George Hoffman, being 74 shares, for the price of $60,000, payment to be made in debentures of the corporation bearing 7 percent interest. On or about April 1, 1964, sufficient of these debentures are to be redeemed to enable George Hoffman to receive a sum equal to his income tax resulting from this sale plus $10,000.'

"5. Petitioner paid to George Hoffman in connection with the acquisition of his stock described in Finding of Fact No. 4 the following interest payments:

| "Fiscal year ending January 31 | Amount |
| --- | --- |
| 1964 | $2216.62 |
| 1965 | $3252.05 |
| 1966 | $3056.25 |

"Petitioner listed said interest payments as deductions from its gross income during the respective fiscal years referred to herein.

"6. Petitioner contended that the interest paid to George Hoffman described in Finding of Fact No. 5 was a deductible expense under Sec. 71.04 (2) Wis. Stats., whereas respondent maintained that said payment of interest was not a deductible expense.

"7. Interest paid as described in Finding of Fact No. 5 was not ordinary and necessary expenses actually paid within the year out of the income in the maintenance and operation of its constructing business and property."

The evidence adduced at the hearing also showed that pursuant to the taxpayer's by-laws, the stock carried a restriction on transfer whereby in the event any shareholder desired to sell his stock the corporation had the right of first refusal for a period of forty-five days.

The evidence also showed that prior to the redemption of George Hoffman's stock in 1963, the shareholders of the corporation were Paul Hoffman, 198 shares; George Hoffman, 74 shares; Gerald Hoffman, 34 shares; Betty Vosper and Carlton Hoffman, each 33 shares; and Ernie Miron, 22 shares. Gerald Hoffman, Carlton Hoffman and Betty Vosper are the children of Paul Hoffman.

As to the repurchase of George Hoffman's stock in 1963, Gerald Hoffman, the president and general manager of the corporation, testified that George Hoffman wanted to sell his stock because the corporation did not pay dividends and he needed to supplement his income. He testified that George Hoffman could have sold his stock on the open market after forty-five days and that the corporation purchased the stock because "we wanted to retain close ownership of this stock because of existing harmonious operation." He further testified that due to the nature of the business, the corporation required a large amount of working capital; thus the seven percent debenture was issued rather than a cash payment.

Sec. 71.04 (2), Stats., authorizes the deduction of ordinary and necessary expenses paid by the corporation in the maintenance and operation of the business, including interest paid in the operation of the business:

"71.04 **Deductions from gross income of corporations.** Every corporation . . . shall be allowed to make from its gross income the following deductions:

". . . .

"(2) Other ordinary and necessary expenses actually paid within the year out of the income in the maintenance and operation of its business and property . . . and including also interest and rent paid during the year in the operation of the business from which its income is derived; . . ."

In *Wisconsin Ornamental Iron & Bronze Co. v. Wisconsin Tax Comm.* (1930), 202 Wis. 355, 229 N. W. 646,

233 N. W. 72, the corporation repurchased the shares of one of its stockholders and payment was deferred. The tax commission disallowed a deduction claimed for interest paid on the deferred portion. This court affirmed the commission's finding that the interest was not deductible under sec. 71.03 (2), Stats. (now sec. 71.04 (2)). The court stated:

". . . Sec. 71.03 (2) authorizes deduction for 'interest paid during the year in the operation of the business from which its income is derived.' The Tax Commission and the trial court correctly held that this was not interest paid 'in the operation of the business from which its income is derived.' Nor is it a transaction from which any income will ever accrue to the state. . . . It matters not to the state who owns the stock. The purchase of this stock on the part of the corporation was but a mere readjustment of its internal affairs, bearing no relation whatever to its activities giving rise to income. The interest paid by it on the deferred portion of the purchase price of the stock was in no sense of the word paid 'in the operation of the business from which its income is derived,' and its deduction was not authorized by the statute." *Wisconsin Ornamental Iron & Bronze Co. v. Wisconsin Tax Comm., supra,* page 363.

Subsequent to the *Wisconsin Ornamental Case,* the Wisconsin Department of Taxation adopted the following administrative rule:

"Tax 3.20 **Interest paid by corporations.** (Section 71.04 (2), Wis. Stats.) Interest paid on money borrowed by a corporation to purchase its own capital stock is not deductible." 7 Wis. Adm. Code, sec. Tax 3.20.

Under the particular facts in *Rib Lake Lumber Co. v. Tax Comm.* (1933), 212 Wis. 412, 249 N. W. 322, this court held that interest paid on money borrowed to purchase stock as a part of a corporate reorganization was deductible under sec. 71.03 (2), Stats. (now sec. 71.04 (2)). In that case a Wisconsin holding company,

which held the shares of several Wisconsin subsidiary corporations, caused a Delaware corporation to be organized and transferred its shares in the Wisconsin subsidiaries to the Delaware corporation. The Delaware corporation took title to the subsidiaries' assets and dissolved those corporations. The Delaware corporation gave the Wisconsin holding company shares of its own capital stock and debentures in payment for the transfer of the shares of the subsidiary corporations. This court held that the interest paid by the Delaware corporation on the debentures was deductible, as interest paid in the operation of the business.

In *Pelton Steel Casting Co. v. Department of Taxation* (1954), 268 Wis. 271, 67 N. W. 2d 294, this court held that interest paid by a corporation on a bank loan obtained for the purpose of repurchasing its own stock was not deductible under sec. 71.04 (2), Stats. In that case, all of the common stock held by two shareholders, representing 80 percent of the common stock, was redeemed by the corporation, with the result that the shareholder formerly holding 20 percent of the common stock, after the redemption had 100 percent control. The court distinguished the *Wisconsin Ornamental Case* from the *Rib Lake Lumber Case,* and held in the instant case that the transaction did not affect the earnings of the corporation, and thus the interest paid on money borrowed to repurchase the stock was not interest paid in the operation of the business. The court stated:

"The rule [Tax 3.20] is an interpretation of the case of *Wisconsin Ornamental I. & B. Co. v. Wisconsin Tax Comm.* 202 Wis. 355, 229 N. W. 646, 233 N. W. 72, and that case is directly in point here. The rule is based on the obvious difference between a corporation borrowing money to buy material or to finance operating expenses and borrowing money to centralize control of the corporation for the direct benefit of an individual or certain individuals, and it is that difference which dis-

tinguishes the case of *Wisconsin Ornamental I. & B. Co.,* *supra,* from *Rib Lake Lumber Co. v. Tax Comm.* 212 Wis. 412, 249 N. W. 322. . . .

"The transactions of appellant here did not affect the earnings of the corporation so that the interest paid on the money borrowed could be deducted from the gross income. It is only 'interest . . . paid during the year in the operation of the business from which its income is derived' that is deductible. Sec. 71.04 (2), Stats. The loan was made for the sole purpose of securing funds, which, together with $300,000 of other cash, should be used to purchase for retirement the Ehne and Fawick stock, and the loan agreement expressly so provides. The transaction is not one from which any income will ever accrue to the state . . . . 'The interest paid . . . was in no sense of the word paid "in the operation of the business from which its income is derived," and its deduction was not authorized by the statute.' *Wisconsin Ornamental I. & B. Co. v. Wisconsin Tax Comm., supra* (p. 363)." *Pelton Steel Casting Co. v. Department of Taxation, supra,* pp. 276, 277.

In *Basic Products Corp. v. Department of Taxation* (1963), 19 Wis. 2d 183, 120 N. W. 2d 161, the taxpayer, a publicly held corporation, borrowed certain sums for the purpose of retiring its preferred stock as part of a plan established at the time the stock was issued. This court held that the interest paid on the money borrowed to redeem the preferred stock was deductible under sec. 71.04 (2), Stats. The court held that the administrative rule was not valid as applied to the facts of that case, and distinguished the *Wisconsin Ornamental* and the *Pelton Steel Cases* on the ground that in those cases the repurchase of stock was for a private purpose, *i.e.,* a mere readjustment of internal affairs or to centralize control for the direct benefit of an individual or individuals.

"The department rule was upheld in *Pelton Steel Casting Co. v. Department of Taxation* (1954), 268 Wis. 271, 276, 67 N. W. (2d) 294, which case was very similar

to the *Wisconsin Ornamental Case.* In both cases interest was paid on money used to purchase the corporation's own shares, but the purpose in each case was to realign the interests of certain individual stockholders.

"In the *Wisconsin Ornamental Case* interest was paid by the corporation on the deferred portion of the purchase price under a contract made by the corporation with a single stockholder. This prompted the supreme court to observe, at page 363:

" 'The purchase of this stock on the part of the corporation was but a mere readjustment of its internal affairs, bearing no relation whatever to its activities giving rise to income.'

"Similarly, in the *Pelton Steel Case* the corporation borrowed money to purchase the common stock held by two shareholders with the result that a third shareholder would remain the owner of all the common stock of the corporation. The court found that the *Wisconsin Ornamental Case* was directly in point, adding, at page 276:

" 'The rule is based on the obvious difference between a corporation borrowing money to buy material or to finance operating expenses and borrowing money to centralize control of the corporation for the direct benefit of an individual or certain individuals, . . .'

"If interpreted in the light of the *Wisconsin Ornamental Case* and the *Pelton Steel Case* and limited to comparable factual situations, the department rule is valid. In other words, if interpreted to preclude the deduction of interest paid on money borrowed by a corporation to purchase its own capital stock for the purpose of readjusting the ownership interest of specific individuals, it is a rule consistent with the statute." *Basic Products Corp. v. Department of Taxation, supra,* pages 186, 187.

This court went on to state that the corporation in the instant case was publicly held; that the entire outstanding issue of preferred stock was redeemed by the corporation; and that there was no indication that any individual shareholder or group of shareholders was favored by the transaction.

It was further held that interest paid on a transaction for the purpose of realigning the corporation's financial structure was paid in the operation of the business from which the income is derived.

". . . In a very real sense the realignment of a corporation's financial structure can play a role 'in the operation of the business from which its income is derived.'

"In the instant case, the readjustments were not made for private purposes as they so obviously were in the *Wisconsin Ornamental Case* and the *Pelton Steel Case*. The taxpayer in this case revised its stock structure for the purpose of strengthening the corporation and thereby better enabling it to produce income. . . .

". . . In realigning the corporate stock interests for the benefit of *all* the common stockholders, the corporation was pursuing a valid and regular business purpose; in the absence of a showing that this was done for the benefit of a few as opposed to the benefit of the corporation, we consider that interest paid in the course thereof is deductible within the statute. This is particularly true as to a publicly owned corporation. In a closely held corporation it is more difficult to demonstrate that the readjustment of stock holdings is in the interest of the corporation. Any suggestion of manipulation is nonexistent in the instant case, and the deduction must be allowed." *Basic Products Corp. v. Department of Taxation, supra,* pages 188, 189.

This case is somewhere in between the *Wisconsin Ornamental* and *Pelton Steel Cases* on the one hand, and the *Rib Lake Lumber* and *Basic Products Cases* on the other. The redemption of George Hoffman's stock did not significantly shift control as did the redemptions that occurred in *Wisconsin Ornamental* and *Pelton Steel Cases*. George Hoffman's 74 shares represented 18 percent control. Both before and after redemption, Paul Hoffman, the majority shareholder, had over 50 percent and less than 66⅔ percent of the control. However, there was no showing that the redemption was for the pur-

pose of realigning the corporation's financial structure or was at all related to the income production of the corporation as in *Rib Lake Lumber* and *Basic Products*.

Petitioner is a closely held corporation, primarily by members of the Hoffman family. It is undisputed that George Hoffman was a dissatisfied stockholder and proposed to sell his stock. Petitioner argues it had many good business reasons for the purchase of the stock, including prevention of the sale of the stock to outsiders and the preservation of working capital. However, the commission made a determination to the contrary.

The only evidence as to the corporation's purpose in redeeming the stock was the testimony of Gerald Hoffman that the stock was purchased to prevent the sale to outsiders and keep the corporation closely held. No showing was made that the sale of the shares to an outsider would have any effect on the income producing activity of the corporation, or that maintenance of control by the existing shareholders was necessary to preserve or strengthen the corporation's financial status.

As stated in *Wisconsin Ornamental* and *Pelton Steel,* the state cares not who owns the stock. "The purchase of this stock on the part of the corporation was but a mere readjustment of its internal affairs, bearing no relation whatever to its activities giving rise to income. The interest paid . . . was in no sense of the word paid 'in the operation of the business from which its income is derived,' and its deduction was not authorized by the statute." *Wisconsin Ornamental Iron & Bronze Co. v. Wisconsin Tax Comm., supra,* page 363.

The commission determined that the interest paid was not ordinary and necessary expenses actually paid within the year out of the income in the maintenance and operation of its construction business and property.

The findings of the commission are supported by substantial evidence when reviewing the entire record.

*Robertson Transportation Co. v. Public Service Comm.*
(1968), 39 Wis. 2d 653, 159 N. W. 2d 636. The judgment
of the circuit court is affirmed.

*By the Court.*—Judgment affirmed.