MASTER LOCK COMPANY and another, Appellants, v. DEPARTMENT OF REVENUE, Respondent.

*No. 335. Argued February 5, 1974.—Decided March 18, 1974.*
(Also reported in 215 N. W. 2d 529.)

718

722

For the appellants there were briefs by *Marvin E. Klitsner, John S. Skilton* and *Foley & Lardner*, all of Milwaukee, and oral argument by *Mr. Skilton.*

For the respondent the cause was argued by *Allan P. Hubbard*, assistant attorney general, with whom on the brief was *Robert W. Warren*, attorney general.

HEFFERNAN, J. This court has previously considered the deductibility of interest paid by a corporation and incurred by financing of the purchase of its own stock. The cases demonstrate that, if the purchase amounts to no more than a readjustment of internal affairs, *i.e.*, a realignment of the interests of the individual stockholders, the interest on the debt created by the purchase is not paid in the operation of the business from which the corporate income is derived and, therefore, the interest is not deductible. *Basic Products Corp. v. Department of Taxation* (1963), 19 Wis. 2d 183, 186, 120 N. W. 2d 161; *Pelton Steel Casting Co. v. Department of Taxation* (1954), 268 Wis. 271, 276, 67 N. W. 2d 294; and *Wisconsin Ornamental Iron & Bronze Co. v. Wisconsin Tax Comm.* (1930), 202 Wis. 355, 363, 229 N. W. 646, 233 N. W. 72. On the other hand, if the stock purchase is related to the income production of a corporation, the interest on a debt is deductible as being paid in the operation of the business from which income is derived. *Hoffman Co. v. Department of Revenue* (1971), 51 Wis. 2d 220, 229, 186 N. W. 2d 228; *Basic Products, supra,* page 187; *Pelton Steel, supra,* page 277; and *Wisconsin Ornamental, supra,* page 363.

*The Basic Products Case* pointed out that the rule can be literally and properly applied to situations like those in *Wisconsin Ornamental* and in *Pelton,* where the purpose of the repurchase was merely to adjust or realign the interests of individual stockholders. It held, however, in *Basic Products* that the rule was inapplicable and beyond the mandate of the statute where there was no suggestion that the purchase of the entire outstanding preferred stock was for the purpose of merely realigning the shareholders' interest or to favor any individual stockholders. *Basic Products* held that, where there is a repurchase of corporate stock and the motivation of the transaction was the improvement of the corporate structure and the realignment of its finances, such a transaction could play a role in the operation of the business from which the corporation's income is derived. *Basic Products* held that the realignment of the corporate stock interest in those circumstances was in pursuit of a valid and regular business purpose and that, where there was no showing that the repurchase was accomplished for the benefit of the few, in contrast to the benefit of the corporation, the interest was deductible.

*Basic Products* was, however, a publicly owned corporation, and the court recognized that in such cases it is easier to justify the corporate purpose when stock is repurchased than in circumstances where the corporation is a closely held family business.

In the *Hoffman Case, supra,* the company purchased the shares of a minority stockholder and a payment was made over a period of years at a rate of seven percent interest. The supreme court upheld the commission's finding that the interest paid was not ordinary and necessary expense actually paid within the year out of the income for maintenance and operation of its business. The court pointed out that the only evidence before the commission merely indicated that the seller of the stock

was dissatisfied with the failure of the corporation to pay dividends, which he needed to supplement his income. The evidence before the commission tended to show that Hoffman was a dissatisfied stockholder and he sold his shares for that purpose. In *Hoffman,* this court said:

"Petitioner argues it had many good business reasons for the purchase of the stock, including prevention of the sale of the stock to outsiders and the preservation of working capital. However, the commission made a determination to the contrary." (P. 230)

The court emphasized that there was no showing that the maintenance of control by the remaining shareholders, rather than a sale to a third party, was necessary to preserve or strengthen the corporation's financial status.

In the instant case, the tax appeals commission made 23 findings of fact. These findings of fact are undisputed, since they recite nothing more than the chronology of the circumstances and the transactions that led to the financing of the purchasing of the stock. The last of the findings of fact, No. 23, recites:

"The interest expense and legal fees involved herein were not ordinary and necessary expenses of the petitioner within the scope and meaning of Section 71.04 (2) of the Wisconsin Statutes."

While this conclusion may or may not be correct, it is the crucial conclusion of the commission, but it is rendered almost completely meaningless because of its failure to recite the purpose of the stock purchase transaction either therein or in another finding. As we pointed out in *Basic Products,* a realignment of corporate stock interests may well be in the pursuit of a valid and regular business purpose. *Basic Products* held that, in the absence of a showing that the realignment was for the benefit of a few rather than for the benefit of the corporation, the interest should be considered deductible.

*Hoffman, supra,* page 230, relying on earlier cases, emphasized that the question is not to be determined merely on the fact that one group of stockholders might incidentally have been benefited. Obviously, in any sale of corporate securities, both parties presumably would at the time think that they had received a benefit. The basic question is whether the transaction was designed to protect and benefit the corporation in its income-producing capacity. A corporation must be considered as an entity separate and apart from the interests of individual groups of stockholders.

Finding of fact No. 4 recites, and it is undisputed in the evidence:

"For some years prior to 1964, a condition of strife developed and existed between the Soref and Yolles-Stahl groups, which came to a climax in 1964, allegedly threatening the continued income producing capacity, prosperity and growth of the business."

Finding No. 6 indicates that the hiring of the attorneys and the eventual negotiation and execution of the stock purchase agreement was for the purpose of attempting to resolve the dispute between the stockholders.

There was evidence produced at the commission hearings which could lead a reasonable trier of the fact to find that the condition of strife threatened the continued income-producing capacity of the corporation. There was also testimony, principally that of Nathan Berkowitz, which could lead to the conclusion that the dissension, although concededly existing, did not affect the basic well-being of the corporation and that the conflict was not one that affected the continued viability of the corporation, but merely involved a realignment of stock to get rid of one dissident group or the other.

In view of the state of this ambivalent evidence, it was incumbent upon the commission to make a finding of fact either that the stock transaction was beneficial for

the continued income-producing capacity, prosperity, and growth of the business, or that it was merely a realignment of stockholder interests that was not related to the corporate interest. No such finding was made.

Finding No. 23, in the context of the commission's record, is meaningless as a finding of fact. It is, in effect, a conclusion of law, since there is no finding that would lead to the determination made in Finding No. 23. Nor do the other 22 findings of fact support what is included as a finding of fact in No. 23. While the first 22 findings demonstrate that there was a realignment of shareholder interest, the mere fact of that realignment is irrelevant if a corporate purpose is served.

The cases cited above point out that the true interest of the state of Wisconsin is served by permitting deductions from gross income when those deductions serve the purpose of preserving the corporate entity in such a manner that it may in the future continue to produce income that will be taxable by the state of Wisconsin. On the basis of the rationale of earlier cases, a deduction should be allowed in those instances where a stock realignment is effected by a corporate purchase of its own stock when it is for the purpose of preserving the income-producing capacity of the corporation. It is then an expenditure in the maintenance and operation of the corporate business.

The rationale set forth in *Mountain State Steel Foundries, Inc. v. Commissioner of Internal Revenue* (4th Cir. 1960), 284 Fed. 2d 737, is persuasive in our interpretation of the Wisconsin statute. Concededly, as the respondent argues, Wisconsin tax law is not "federalized" in respect to the type of deduction under consideration herein, but the rationale of the case is convincing. The court in *Mountain State* said:

"When the stockholders have such conflicting interests, the corporation and its future are necessarily affected. When the situation results in demands that the business

be sold or liquidated, as it did here, the impact of the conflict upon the corporation is direct and immediate. . . . The resolution of such a conflict, so that the need of the corporation may govern managerial decision, is plainly a corporate purpose." (P. 745)

There was strong evidence in this case to support a finding that the long-standing conflict in respect to basic management policies affected the continued well-being of the corporation. An intracorporate dispute was approaching the litigation stage. The threat was so substantial that its withdrawal was part of the consideration for the stock transfer agreement. There was substantial evidence on which the commission could, had it wished to, find that the internal strife was thus resolved to protect the corporate entity. We believe that the weight of the evidence would support that finding. That fact-finding function is, however, not ours, but the commission's.

We have pointed out that there was also testimony to the contrary. The respondent asked for a specific finding that "The money was borrowed . . . for the direct benefit of the Soref stockholders."

The attorneys for the Department of Revenue recognized that, where the evidence revealed a corporate purpose connected with income production, the commission was required, if it were to uphold the tax, to specifically find that the motive for the transaction was the benefit of the Soref stockholders. Inexplicably, despite the request, no finding in that respect was made. Such finding was essential to support the conclusion of law that the commission reached.

No reliance can be placed upon Administrative Code, Rule TAX 3.20 to bolster the commission's conclusion unless it is first determined that the stock purchase was in furtherance only of a private interest and not of the corporate interest. Under the interpretations heretofore rendered by the court, no question relevant to the tax-

ability of the corporation's gross income is resolved merely by concluding that the interest expense and legal fees involved were not "ordinary and necessary expenses."

A similar tax provision using the phrase, "ordinary and necessary expenses," appeared in sec. 71.03 (2), Stats., and was discussed in *Wisconsin Electric Power Co. v. Department of Taxation* (1947), 251 Wis. 346, 29 N. W. 2d 711. Mr. Justice J. WARD RECTOR, speaking for the court, pointed out that whether expenses were ordinary and necessary were to be measured by their purpose, and that if a proper corporate purpose is served, the expense is deductible even though that expense be "quite extraordinary." He said, "The only permissible inquiry is whether interest is paid in the operation of the business." (Pp. 358, 359) No findings in respect to this inquiry were made in the instant case. Accordingly, the cause must be remanded to the commission for further findings of fact consistent with this opinion.

The same rationale is appropriate in respect to the deductibility of the legal expenses. 8 Wis. Adm. Code, Rule TAX 3.47, provides: "Legal expenses incurred in connection with the operation of a taxpayer's business are proper deductions . . . ." This administrative rule is in interpretation of sec. 71.04 (2), Stats. It clearly indicates that the test for the deductibility for legal expenses is the same as that which we have set forth in respect to the deductibility of interest: Were they incurred in the operation of the business. No finding was made to support the denial of the deduction for legal expenses. Since the criterion in respect to each is the same, the entry of proper findings in respect to the purpose of the entire transaction will resolve the questions in respect to both the interest and the legal expenses. Because of the inadequacy of the findings, the order of the commission and the judgment of the circuit court which affirmed that order cannot be sustained.

*By the Court.*—Judgment reversed, and cause remanded for further proceedings consistent with this opinion.

ROBERT W. HANSEN, J., took no part.