KATZ, Appellant, vs. TAX COMMISSION and another, Respondents.

*December 6, 1932—March 7, 1933.*

For the appellant there was a brief by *Wood, Warner & Tyrrell* of Milwaukee, and oral argument by *Richard H. Tyrrell.*

For the respondents there was a brief by the *Attorney General, F. C. Seibold,* assistant attorney general, *George A. Bowman,* district attorney of Milwaukee county, and *C. Stanley Perry,* assistant corporation counsel, and oral argument by *Mr. Seibold.*

The following opinion was filed January 10, 1933:

FAIRCHILD, J.   While it is important for the purpose of raising revenue that every taxable item be disclosed so that

it may bear its proper burden, there can be no imposition of taxes not consistent with the general principles underlying the system adopted. The law requires the taxpayer in his report to disclose his taxable income. When this is faithfully attended to the tax to be imposed follows the terms of the statute, and no power other than legislative exists under the republican form of government to lower or increase it. The officials having these matters in charge are bound to search out unreported and to verify reported incomes. Their methods are to be given helpful consideration by others, but when challenged they must stand the test provided by the constitution and the usual rules of statutory construction. The primary inquiry here is directed to the item of so-called profits sought to be taxed which arose from the sale described in the statement of facts. Is it within the class of things which, because of their nature and substance, are to be treated as income and subject to assessment as such?

Appellant reported income on the cash receipts and disbursements basis, including the contract entered into by him with Bonwit and the partial payment made in 1929. Under this method of reporting the assessor of incomes was informed of all that had been received, and had Bonwit been able to continue further payments all would have been reported as received. The statute in force at the time has been interpreted to mean that some method of reporting income must be· used by the taxpayer which will clearly tell of his true income. "The imperative condition of this statute is, that any report made upon whatever basis must clearly reflect the income which the law subjects to a tax." *Wisconsin Ornamental I. & B. Co. v. Tax Commission*, 202 Wis. 355, 229 N. W. 646, 233 N. W. 72.

Different businesses may require various methods of reporting details so as to disclose with the most possible exactness profits earned during the year. The legislature realized this and made provision for it. *State ex rel. Waldheim & Co. v. Tax Commission*, 187 Wis. 539, 204 N. W.

481. Perhaps in a great majority of cases the taxpayer's income can most fairly be presented in a report based on cash receipts and disbursements, while others doing a cash and credit business can get a fairer reflection of their income by using a report on the accrual basis affording opportunity for adjustment, of losses not provided against in reported profits, by later deductions. Such enterprises reflect in their books their earnings on that (accrual) basis and their returns for income tax purposes may thus be readily made. *State ex rel. Waldheim & Co. v. Tax Commission, supra.* In the case of *Wisconsin Ornamental I. & B. Co. v. Tax Commission, supra,* on rehearing, it was said:

"The books of the company were so kept that they reflected the cost of the materials so shipped. . . . We cannot escape the conclusion that the profit shown on the products billed represents income earned as of that date, which the law subjects to the payment of an income tax. It represents goods sold, furnished, and delivered, a great deal of which has been paid for, and the balance of which represents profit just as clearly as did the contracts held to constitute income in *State ex rel. Waldheim & Co. v. Tax Commission.*"

In the *Waldheim Case* Mr. Justice CROWNHART said:

"Credit is secured on a conditional sales contract, under which goods may be repossessed in case of default by the purchaser. . . . Modern business is very largely done on credit. Books are kept, and profits are determined from inventories and cash receipts at stated periods. In such inventories bad accounts are charged off, goods on hand are carried at their true value, and profits or losses are determined from a balancing of accounts. Manifestly, profits or losses cannot be ascertained to perfection. In the administration of the income tax law, where profits of one year have been overestimated, deductions may be made in subsequent years to equalize, but uniform rules or methods must be adopted by the commission in order to bring about equity and justice between the government and the taxpayers."

The method of reporting used by a taxpayer may be affected by the character of the business in which the tax-

payer is engaged, but whatever method is used for ascertaining income where the substance of the business is made up of contracts secured by retaining title to the thing sold or in some other way and providing for deferred payments as in the cases of *State ex rel. Waldheim & Co. v. Tax Commission, supra,* and *Wisconsin Ornamental I. & B. Co. v. Tax Commission, supra,* they may be treated without injustice to the taxpayer as the equivalent of cash. The difference in the situations of such taxpayers and of an individual concerned with a single transaction is readily disclosed by reference to the mechanism used by the one in securing future payments, and the continuity of his business, and the lack of these elements in the transaction of the other. It does not follow from the doctrine that controlled the *Waldheim* and the *Wisconsin Ornamental I. & B. Co. Cases* that in an isolated instance where a taxpayer, not engaged in the business of selling stocks, has entered into an agreement to sell without security his assets, under the terms of which he is to be paid in instalments, he may be required to report his income for the particular year in which the sale was made on an accrual basis. A contract of sale under which the seller parts with his property, receives the equivalent of that which is disposed of, and which amounts to a reinvestment of the sales price, may be treated as equivalent to cash. But the value of an unsecured contract such as we have under consideration, unrelated to and disconnected from a continuing business, cannot be arrived at or properly measured without due consideration of the likelihood of defaults in payment of the deferred instalments. The taxpayer in the instance just mentioned has nothing but a promise of payment in the future. The case of *Richardson v. Conway,* 42 Fed. (2d) 875, dealt with facts somewhat resembling those now before us, but in that case there was no doubt about the convertibility of the contract into cash. It provided for the sale of 501 shares of capital stock, 100 shares of which were presently delivered and paid for; the

remaining 400 shares placed in escrow to be paid for in blocks of fifty shares each at intervals of six months thereafter.

The evidence concerning the cash value of appellant's contract is to the effect that in his opinion his interest in the contract did not have a readily realizable market value in 1929; that he could not have sold his interest in that contract in 1929, although upon negotiations and the allowance of a substantial discount perhaps he might have disposed of it. Of course in estimating the value of this contract conditions obtaining in 1929 would naturally be material as against subsequent events, but it does appear that appellant was unable to borrow $75,000 during the early part of the year 1930 upon this contract. The appellant explains the lack of security for the carrying out of the contract on the part of Bonwit by saying: "We certainly asked for security and collateral; we did not get it; we made quite a fight for it." The evidence also shows that the purchase by Bonwit from appellant was to enable Bonwit to refinance the company; it can be readily understood that while in this process the value of the contract would be very uncertain. If the buyer is successful he pays, if not the seller loses. The transaction is too speculative to warrant assigning a fixed value. In the case of enterprises doing business on the instalment plan there exists assurance in the nature of the business that both the state and the taxpayer's interests can be protected even if profits are anticipated to some extent. So, too, where a sale on time is so secured as to be negotiable or readily convertible into cash. In the case of an isolated contract such as this, where the arrangement does not amount to a new investment, and, as happened here, the contract becomes of doubtful value, it would necessarily be arbitrary and beyond the scope and intent of the income tax law to visit upon the taxpayer an assessment for that which in fact never was and may never be income.

. The additional assessment must fail because it is based on the assumption of the existence of a profit which had not in fact come into existence. This transaction is distinguishable from those contracts in association with many others under management of a single and continuing business or which come into being under circumstances making them readily convertible into money. Under the facts appearing in this case it is impossible to say that this contract in 1929 showed a then existing and taxable profit beyond that reported by the taxpayer, and the additional assessment must be set aside.

We are of the opinion that the initial assessment is not involved in this appeal, and have confined our consideration of matters entirely to the validity of the additional assessment based on treating the entire profit as income of 1929.

*By the Court.*—The judgment of the circuit court is reversed, with directions to vacate the additional assessment.

A motion for a rehearing was denied, with $25 costs, on March 7, 1933.