# COURT OF APPEALS OF WISCONSIN
## PUBLISHED OPINION

Case No.:        2022AP182

Complete Title of Case:

> **KOBLE INVESTMENTS,**
>
>     **PLAINTIFF-RESPONDENT,**
>
>          **V.**
>
> **ELICIA MARQUARDT,**
>
>     **DEFENDANT,**
>
>          **V.**
>
> **JAMES MILLER,**
>
>     **INTERVENOR-APPELLANT.**

| | |
|---|---|
| Opinion Filed: | April 23, 2024 |
| Submitted on Briefs: | March 15, 2024 |
| Oral Argument: | |

| | |
|---|---|
| JUDGES: | Stark, P.J., Hruz and Gill, JJ. |
| Concurred: | |
| Dissented: | |

| | |
|---|---|
| Appellant ATTORNEYS: | On behalf of the intervenor-appellant, the cause was submitted on the briefs of *Attorney James D. Miller*, Wausau. |
| Respondent ATTORNEYS: | On behalf of the plaintiff-respondent, the cause was submitted on the brief of *Attorney Brandon O'Connor* of *Ellison & O'Connor, LLC*, Wausau. |

# COURT OF APPEALS
## DECISION
## DATED AND FILED

### April 23, 2024

Samuel A. Christensen
Clerk of Court of Appeals

**NOTICE**

This opinion is subject to further editing. If published, the official version will appear in the bound volume of the Official Reports.

A party may file with the Supreme Court a petition to review an adverse decision by the Court of Appeals. *See* WIS. STAT. § 808.10 and RULE 809.62.

**Appeal No.    2022AP182**

**STATE OF WISCONSIN**

Cir. Ct. No. 2020SC979

**IN COURT OF APPEALS**

---

KOBLE INVESTMENTS,

    PLAINTIFF-RESPONDENT,

  V.

ELICIA MARQUARDT,

    DEFENDANT,

  V.

JAMES MILLER,

    INTERVENOR-APPELLANT.

---

APPEAL from an order of the circuit court for Marathon County: LAMONT K. JACOBSON, Judge. *Reversed and cause remanded with directions*.

Before Stark, P.J., Hruz and Gill, JJ.

¶1    GILL, J.   This case began as an eviction action by Koble Investments against its tenant, Elicia Marquardt.  This appeal, however, pertains to Marquardt's counterclaims against Koble and, more specifically, to efforts by Marquardt's former attorney, James Miller, to recover attorney fees and costs.  In particular, Attorney Miller contends that the circuit court erred by rejecting Marquardt's counterclaim alleging a violation of WIS. STAT. § 427.104(1)(j) (2021-22),[1] a provision of the Wisconsin Consumer Act (WCA), and her counterclaim alleging that her lease was void and unenforceable under WIS. STAT. § 704.44(10) and WIS. ADMIN. CODE § ATCP 134.08(10) (Oct. 2021).[2]  Attorney Miller therefore argues that he is entitled to recover attorney fees and costs under WIS. STAT. § 425.308(1) for Koble's violation of the WCA and under WIS. STAT. § 100.20(5) for Koble's violation of § ATCP 134.08.  Attorney Miller also asserts that Marquardt is entitled to damages on her void lease claim.

¶2    As explained below, we conclude that the circuit court erred by determining that the WCA did not apply to Marquardt's residential lease, and we further conclude that the undisputed facts show that Koble violated WIS. STAT. § 427.104(1)(j).  Additionally, we agree with Attorney Miller that Marquardt's lease was void and unenforceable under WIS. STAT. § 704.44(10) and WIS. ADMIN. CODE § ATCP 134.08(10) because the lease allowed Koble to evict a tenant for a crime committed on the rental premises but failed to include the mandatory domestic abuse notice.  We therefore reverse the circuit court's decision and remand for a determination of Attorney Miller's reasonable attorney fees and costs, and for a

---

[1] All references to the Wisconsin Statutes are to the 2021-22 version unless otherwise noted.

[2] All references to WIS. ADMIN. CODE § ATCP 134.08 are to the October 2021 register.

determination of the damages that Marquardt is entitled to recover on her void lease claim.

## BACKGROUND

¶3    In May 2019, Marquardt and Koble entered into a twelve-month residential lease.  On March 27, 2020, following the onset of the COVID-19 pandemic, Governor Tony Evers issued an emergency order prohibiting landlords "from serving any notice terminating a tenancy for failure to pay rent."  The emergency order provided that it would remain in effect for a period of sixty days.

¶4    On May 15, 2020, while the sixty-day moratorium was in effect, Koble delivered to Marquardt a five-day eviction notice for nonpayment of rent. Koble then filed an eviction action against Marquardt on June 2, 2020.  Koble's complaint sought both a judgment of eviction and $1,548 in damages.

¶5    Marquardt subsequently filed an answer and counterclaims asserting, among other things, that her lease was void and unenforceable under WIS. STAT. § 704.44(10) and WIS. ADMIN. CODE § ATCP 134.08(10) and that Koble had violated the WCA by serving the five-day eviction notice while the sixty-day moratorium was in place.  At the return date on July 1, 2020, Koble moved to dismiss its eviction claim, and a court commissioner granted that request.  On July 15, 2020, Koble filed an answer to Marquardt's counterclaims, in which it admitted that it had "delivered a 5-Day Right to Cure Notice to [Marquardt] during the governor of Wisconsin's moratorium on evictions."

¶6    Thereafter, proceedings continued on Marquardt's counterclaims.  In addition, Marquardt filed a motion for attorney fees both under the WCA and based on Koble's purported violation of WIS. STAT. § 704.44(10) and WIS. ADMIN. CODE

§ ATCP 134.08(10). Attorney Miller also moved to intervene, seeking to represent his own interest in recovering attorney fees. During a damages hearing on September 29, 2020, a court commissioner dismissed Marquardt's counterclaims, denied her motion for attorney fees, and denied Attorney Miller's motion to intervene. As relevant here, the court commissioner concluded that the WCA did not apply and that Marquardt's lease was not void and unenforceable under § 704.44(10) and § ATCP 134.08(10).

¶7 Marquardt sought a trial de novo before the circuit court and renewed her motion for attorney fees. Attorney Miller also renewed his motion to intervene. In a written decision, the court denied the motion for attorney fees and the motion to intervene. The court concluded that Marquardt was "not a 'customer' under the [WCA]" and that the WCA does not apply to residential leases. The court further concluded that Marquardt's lease was not void and unenforceable under WIS. STAT. § 704.44(10) and WIS. ADMIN. CODE § ATCP 134.08(10) because it did not "authorize eviction based on the commission of a crime." In addition, the court determined that because the lease was not void and unenforceable, Marquardt was not entitled to recover "rental payments and fees imposed by the lease" as pecuniary damages. Finally, the court denied Attorney Miller's motion to intervene.

¶8 A de novo hearing on Marquardt's remaining counterclaims took place on January 19, 2022. Marquardt did not appear at that hearing, and Attorney Miller therefore withdrew one of Marquardt's two remaining claims based on a failure of proof in the absence of her testimony. On Marquardt's final counterclaim, Attorney Miller argued that the circuit court should award punitive damages based on Koble's alleged conduct in serving illegal eviction notices on multiple tenants during the eviction moratorium.

¶9    The circuit court rejected Marquardt's claim for punitive damages.  It then granted Attorney Miller's motion to withdraw from representing Marquardt and permitted him to intervene in order to appeal "the issues underlying the request for statutory fee-shifting attorney fees/costs."  Attorney Miller now appeals.[3]

## DISCUSSION

### I.  Marquardt's claim under the WCA

*A.  WISCONSIN STAT. § 427.104(1) applies to Koble's attempt to collect a debt arising from Marquardt's residential lease.*

¶10    As discussed above, Marquardt asserted a counterclaim based on Koble's alleged violation of WIS. STAT. § 427.104(1)(j), a provision of the WCA, which states:

> (1) In attempting to collect an alleged debt arising from a consumer credit transaction or other consumer transaction, including a transaction primarily for an agricultural purpose, where there is an agreement to defer payment, a debt collector may not:
>
>   ….
>
> (j) Claim, or attempt or threaten to enforce a right with knowledge or reason to know that the right does not exist[.]

Specifically, Marquardt claimed that Koble violated § 427.104(1)(j) by serving her with a five-day eviction notice for failure to pay rent during the sixty-day moratorium imposed by the governor's March 27, 2020 emergency order.  In response to Marquardt's counterclaim, Koble admitted that it had delivered a

---

[3] This matter was originally a one-judge appeal.  *See* WIS. STAT. § 752.31(2)(a).  By order dated September 18, 2023, the chief judge of the court of appeals granted Attorney Miller's motion for a three-judge panel.  *See* WIS. STAT. RULE 809.41(3).

five-day eviction notice to Marquardt during the sixty-day moratorium. Koble argued, however, that the WCA did not apply to its residential lease with Marquardt. The circuit court agreed, concluding that a residential tenant—like Marquardt—cannot qualify as a "customer" for purposes of the WCA and that the WCA does not apply to residential leases.

¶11 Determining whether the WCA applies in the instant case requires us to interpret statutory language and apply it to undisputed facts. "The interpretation and application of a statute to an undisputed set of facts are questions of law that we review independently." *McNeil v. Hansen*, 2007 WI 56, ¶7, 300 Wis. 2d 358, 731 N.W.2d 273.

¶12 When interpreting a statute, our objective "is to determine what the statute means so that it may be given its full, proper, and intended effect." *State ex rel. Kalal v. Circuit Ct. for Dane Cnty.*, 2004 WI 58, ¶44, 271 Wis. 2d 633, 681 N.W.2d 110. Our analysis begins with the plain language of the statute. *Id.*, ¶45. "Statutory language is given its common, ordinary, and accepted meaning, except that technical or specially-defined words or phrases are given their technical or special definitional meaning." *Id.* In addition, statutory language must be interpreted "in the context in which it is used; not in isolation but as part of a whole; in relation to the language of surrounding or closely-related statutes; and reasonably, to avoid absurd or unreasonable results." *Id.*, ¶46. "If this process of analysis yields a plain, clear statutory meaning, then there is no ambiguity, and the statute is applied according to this ascertainment of its meaning." *Id.* (quoting *Bruno v. Milwaukee County*, 2003 WI 28, ¶20, 260 Wis. 2d 633, 660 N.W.2d 656).

¶13 As noted above, WIS. STAT. § 427.104(1) prohibits a "debt collector" from engaging in certain practices "[i]n attempting to collect an alleged debt arising

from a consumer credit transaction or other consumer transaction, including a transaction primarily for an agricultural purpose, where there is an agreement to defer payment." Applying the plain language of § 427.104(1) to the undisputed facts, we agree with Attorney Miller that this statute applies to Koble's actions in this case.

¶14 As an initial matter, we agree with Attorney Miller's argument that Marquardt's residential lease of an apartment from Koble was a "consumer transaction," as that term is defined in the WCA. For purposes of the WCA, the term "consumer transaction" means "a transaction in which one or more of the parties is a customer for purposes of that transaction." WIS. STAT. § 421.301(13). The term "customer" means "a person other than an organization … who seeks or acquires real or personal property, services, money or credit for personal, family or household purposes or, for purposes of [WIS. STAT.] ch. 427 only, for agricultural purposes." Sec. 421.301(17). The undisputed facts of this case establish that Marquardt was a "customer" under the definition in § 421.301(17) because she acquired real property for personal, family, or household purposes. Specifically, she acquired a leasehold interest in a residential apartment for her personal use.

¶15 The circuit court concluded that Marquardt was not a "customer" under WIS. STAT. § 421.301(17) because "she did not acquire real property; she acquired only a leasehold interest in real property." Our supreme court has stated, however, that "[a] tenant is a purchaser of an estate in land." *Pines v. Perssion*, 14 Wis. 2d 590, 594-95, 111 N.W.2d 409 (1961).[4]

---

[4] Neither the circuit court nor Koble has cited any legal authority in support of the proposition that a person who acquires a leasehold interest in real property does not "acquire" that property for purposes of WIS. STAT. § 421.301(17).

¶16 Furthermore, other provisions of the WCA support the conclusion that the term "customer" in WIS. STAT. § 421.301(17) includes a person who acquires a leasehold interest in real property. As noted above, a "consumer transaction" is "a transaction in which one or more of the parties *is a customer* for purposes of that transaction." Sec. 421.301(13) (emphasis added). WISCONSIN STAT. § 423.201(1), in turn, states that a "[c]onsumer approval transaction" means "a consumer transaction *other than a sale or lease … of real property*." (Emphasis added.) This language indicates that a "consumer transaction" under the WCA includes a lease of real property. If the term "consumer transaction" did not include a lease of real property, there would be no need for § 423.201(1) to state that the term "[c]onsumer approval transaction" means a consumer transaction "other than a … lease … of real property." And, if a "consumer transaction"—that is, a transaction in which at least one party is a customer—includes a lease of real property, then it follows that the term "customer" includes a person who leases real property as part of a consumer transaction.

¶17 In addition, we note that the term "[c]onsumer lease" in the WCA means "a lease of goods which a merchant makes to a *customer* for a term exceeding 4 months." WIS. STAT. § 421.301(11) (emphasis added). Thus, a "customer" under the WCA may be a person who "acquires" goods—in other words, "personal property"—pursuant to a lease. *See* WIS. STAT. § 421.301(17). If a person who enters into a lease for goods "acquires" those goods and is therefore a "customer" under § 421.301(17), it would be unreasonable to conclude that a person who enters into a lease for real property does not "acquire" that real property for purposes of the same statute.

¶18 Because Marquardt was a "customer," as that term is defined in WIS. STAT. § 421.301(17), her residential lease with Koble was a "consumer transaction"

under § 421.301(13)—that is, "a transaction in which one or more of the parties is a customer for purposes of that transaction." We further agree with Attorney Miller that the "consumer transaction" at issue in this case included "an agreement to defer payment" for purposes of WIS. STAT. § 427.104(1). Marquardt's lease with Koble created a tenancy for a period of twelve months. Nevertheless, Marquardt was not required to pay the full amount of rent for the entire twelve-month period upon signing the lease. Rather, she agreed to pay monthly rent of $730 on the first day of each month. Moreover, Koble had the right to receive $730 per month for the entire duration of the lease, even if Marquardt vacated the premises before the lease ended, subject to Koble's duty to mitigate its damages by making reasonable efforts to re-rent the premises. *See* WIS. STAT. § 704.29(1), (2)(b).

¶19   We agree with Attorney Miller that under these circumstances, "the parties mutually agreed that [Marquardt] could defer payment, paying for the contracted term in twelve equal installments, payable the first of each month." (Emphasis omitted.) This conclusion is consistent with the plain meaning of the term "defer"—that is, to "put off, delay." *See Defer*, MERRIAM-WEBSTER DICTIONARY, https://www.merriam-webster.com/dictionary/defer (last visited Apr. 16, 2024).[5]

¶20   In arguing to the contrary, Koble cites three cases that it contends "provide examples of agreements where the parties agreed to defer payment:" *Katz v. Wisconsin Tax Commission*, 210 Wis. 625, 246 N.W. 439 (1933); *Meske v. Wenzel*, 247 Wis. 598, 20 N.W.2d 654 (1945); and *Security Finance v. Kirsch*, 2019 WI 42, 386 Wis. 2d 388, 926 N.W.2d 167. In *Katz*, a buyer agreed to purchase

---

[5] When a statutory term is undefined, its ordinary and accepted meaning can be established by reference to a recognized dictionary. *Door Cnty. Highway Dep't v. DILHR*, 137 Wis. 2d 280, 293-94, 404 N.W.2d 548 (Ct. App. 1987).

stock from a seller and pay the purchase price in five installments over a period of approximately ten years. *Katz*, 210 Wis. at 626. In *Meske*, a buyer agreed to purchase a business and make monthly payments toward the purchase price. *Meske*, 247 Wis. at 600-01. In *Security Finance*, one party loaned money to another party, and the second party agreed to pay the money back with interest in twelve equal payments over the next twelve months. *Security Fin.*, 386 Wis. 2d 388, ¶3.

¶21    Koble argues that these cases show that an agreement to defer payment "is an agreement in which Party A receives ownership or dominion over an asset and Party B agrees to allow Party A to pay Party B at a later date in the form of payments or one lump sum payment." We agree with Attorney Miller, however, that while Koble's cited cases provide examples of deferred payment agreements, it does not necessarily follow that the residential lease in this case was not a deferred payment agreement. In essence, Koble would have us interpret the term "deferred payment agreement" as including only agreements involving credit—that is, "the right granted by a creditor to a customer to defer payment of debt, to incur debt and defer its payment or to purchase goods, services or interests in land on a time price basis." *See* WIS. STAT. § 421.301(14). However, WIS. STAT. § 427.104(1) sets forth prohibited practices "[i]n attempting to collect an alleged debt arising from a consumer credit transaction *or other consumer transaction* … where there is an agreement to defer payment." (Emphasis added.) Koble's proposed interpretation of § 427.104(1) would essentially render the words "or other consumer transaction" surplusage. *See Kalal*, 271 Wis. 2d 633, ¶46 ("Statutory language is read where possible to give reasonable effect to every word, in order to avoid surplusage.").

¶22    Furthermore, contrary to Koble's assertion, Marquardt *did* receive "dominion over an asset" by virtue of her lease. She was granted exclusive

10

possession of the rental premises for the twelve-month lease term, provided that she paid rent each month and otherwise complied with the lease's terms. *See* WIS. STAT. § 704.05(2) (recognizing a tenant's right to "exclusive possession of the premises," subject to certain exceptions). As noted above, Marquardt was not required to pay the total amount of rent due for her one-year lease up front; she was permitted to pay one-twelfth of that amount each month.

¶23 For these reasons, we agree with Attorney Miller that Marquardt's residential lease constituted a "consumer transaction … where there [was] an agreement to defer payment." *See* WIS. STAT. § 427.104(1).

¶24 In addition, we agree with Attorney Miller that, for purposes of WIS. STAT. § 427.104(1), Koble was acting as a "debt collector" when it served the five-day eviction notice on Marquardt. As relevant here, the term "[d]ebt collector" means "any person engaging, directly or indirectly, in debt collection." *See* WIS. STAT. § 427.103(3). "Debt collection," in turn, means "any action, conduct or practice of soliciting claims for collection or in the collection of claims owed or due or alleged to be owed or due a merchant by a customer." Sec. 427.103(2). Here, by serving its five-day eviction notice on Marquardt, Koble was attempting to collect a claim—i.e., unpaid rent—owed by Marquardt—a customer, *see* WIS. STAT. § 421.301(17)—to Koble—a merchant, *see* § 421.301(25) ("'Merchant' means a person who regularly advertises, distributes, offers, supplies or deals in real or personal property, services, money or credit in a manner which directly or indirectly results in or is intended or designed to result in, lead to or induce a consumer transaction."). As such, based on its plain language, § 427.104(1) applies in this case.

11

¶25    In concluding to the contrary, the circuit court focused on the fact that Marquardt's lease was not a "consumer lease" under the WCA—that is, "a lease of goods which a merchant makes to a customer for a term exceeding 4 months." *See* WIS. STAT. § 421.301(11). This fact, however, is beside the point. As explained above, WIS. STAT. § 427.104(1) applies to an attempt to collect a debt arising from a "consumer transaction … where there is an agreement to defer payment." A "consumer lease" is not required under § 427.104(1).

¶26    The circuit court also cited WIS. ADMIN. CODE § DFI-WCA 1.05 (Mar. 2024),[6] which states: "Acquisition of a leasehold interest in real property by a customer from a merchant is not a consumer lease within the meaning of [WIS. STAT. § 421.301(11)]. For laws governing the leasing of real estate see [WIS. STAT. ch. 704]." As just stated, however, the fact that Marquardt's lease was not a "consumer lease" under § 421.301(11) is immaterial because the lease constituted a consumer transaction with an agreement to defer payment.[7]

¶27    Furthermore, the reference to WIS. STAT. ch. 704 in WIS. ADMIN. CODE § DFI-WCA 1.05 does not compel a conclusion that the WCA can never apply to residential leases. As Attorney Miller notes, while ch. 704 governs residential leases as a general matter, this case involves Koble's attempt to collect a debt, "and there is nothing in the WCA or … ch. 704 or anywhere else that excludes debt collectors from the WCA just because they are collecting a debt related to a residential tenancy." Accordingly, the circuit court erred by concluding that WIS.

---

[6] All references to WIS. ADMIN. CODE § DFI-WCA 1.05 are to the March 2024 register.

[7] We also note that WIS. ADMIN. CODE § DFI-WCA 1.05 supports our conclusion that a person who leases real property is a "customer" for purposes of the WCA because it acknowledges that a "customer" may acquire "a leasehold interest in real property" from a merchant.

STAT. § 427.104(1) was inapplicable because the WCA does not apply to residential leases.

### B. The undisputed facts show that Koble violated WIS. STAT. § 427.104(1)(j).

¶28    Having determined that WIS. STAT. § 427.104(1) applies in this case, we further conclude, based upon the undisputed facts, that Koble violated that statute.  It is undisputed that the governor's March 27, 2020 emergency order prohibited landlords "from serving any notice terminating a tenancy for failure to pay rent" for a period of sixty days.  It is further undisputed that during that sixty-day period, Koble served Marquardt with a five-day eviction notice for nonpayment of rent.  In the circuit court, in response to a request for admission, Koble admitted that it had "no legal right" to serve Marquardt with the five-day eviction notice during the sixty-day moratorium.

¶29    Under these circumstances, we agree with Attorney Miller that by serving the five-day eviction notice, Koble "[c]laim[ed], or attempt[ed] or threaten[ed] to enforce a right with knowledge or reason to know that the right [did] not exist," in violation of WIS. STAT. § 427.104(1)(j).  Koble has never claimed that it was unaware of the governor's emergency order at the time it served the five-day eviction notice.

¶30    In briefs filed in the circuit court, Koble claimed—without citation to any supporting evidence—that it "thought it could not file for eviction during the eviction moratorium," but it "did not realize that it could not give a 5[-]Day Notice during the eviction moratorium."  Even accepting as true Koble's unsupported assertion that it did not know it could not serve a five-day notice during the moratorium period, the undisputed facts show that Koble had "reason to know" that it could not do so.  *See* WIS. STAT. § 427.104(1)(j).  Again, Koble has never asserted

that it was unaware of the governor's emergency order. That order clearly stated that for a period of sixty days beginning on March 27, 2020, landlords were prohibited from "serving any notice terminating a tenancy for failure to pay rent." Thus, the order unambiguously prohibited Koble from serving a five-day eviction notice on Marquardt for her failure to pay rent during the sixty-day moratorium period.

¶31 A "reasonably prudent landlord" is expected to review and follow the relevant law. *See* ***State v. Lasecki***, 2020 WI App 36, ¶¶39-42, 392 Wis. 2d 807, 946 N.W.2d 137. Here, having reviewed the governor's unambiguous emergency order, Koble should have understood—or, stated differently, had reason to know—that it could not serve a five-day eviction notice for failure to pay rent during the moratorium period. Consequently, the undisputed facts show that Koble violated WIS. STAT. § 427.104(1)(j) when it served the five-day notice on Marquardt.

C. *Attorney Miller is entitled to reasonable attorney fees and costs under* WIS. STAT. *§ 425.308(1).*

¶32 If a customer prevails in an action arising from a consumer transaction, "the customer shall recover the aggregate amount of costs and expenses determined by the court to have been reasonably incurred on the customer's behalf in connection with the prosecution or defense of such action, together with a reasonable amount for attorney fees." WIS. STAT. § 425.308(1). We have already concluded that Marquardt was a customer, as that term is defined in the WCA, and that her lease with Koble was a consumer transaction. Furthermore, Marquardt has prevailed in this action arising from her consumer transaction with Koble because: (1) we have determined that Koble violated WIS. STAT. § 427.104(1)(j); and (2) as a result of Marquardt's answer and counterclaims asserting that violation, Koble voluntarily dismissed its eviction action against Marquardt. *See* ***Community***

14

*Credit Plan, Inc. v. Johnson*, 221 Wis. 2d 766, 774, 586 N.W.2d 77 (Ct. App. 1998), *aff'd*, 228 Wis. 2d 30, 596 N.W.2d 799 (1999) ("[A] customer 'prevails' [for purposes of § 425.308] if he or she achieves some significant benefit in litigation involving the creditor's violation of the WCA."). Under these circumstances, Attorney Miller is entitled to recover reasonable attorney fees and costs under § 425.308(1).

## II. Void and unenforceable lease

### A. Marquardt's lease was void and unenforceable under WIS. STAT. § 704.44(10) and WIS. ADMIN. CODE § ATCP 134.08(10).

¶33 Attorney Miller also contends that the circuit court erred by rejecting Marquardt's claim that her lease was void and unenforceable under WIS. STAT. § 704.44(10) and WIS. ADMIN. CODE § ATCP 134.08(10). Again, we independently review the interpretation of a statute and its application to a set of undisputed facts. *McNeil*, 300 Wis. 2d 358, ¶7. The same standard of review applies to our interpretation and application of an administrative code provision. *See Bidstrup v. DHFS*, 2001 WI App 171, ¶12, 247 Wis. 2d 27, 632 N.W.2d 866.

¶34 Under WIS. STAT. § 704.44(10), a residential rental agreement is "void and unenforceable" if it "[a]llows the landlord to terminate the tenancy of a tenant for a crime committed in relation to the rental property and the rental agreement does not include the notice required under [WIS. STAT. §] 704.14." WISCONSIN ADMIN. CODE § ATCP 134.08(10) contains identical language. Section 704.14 requires a residential lease to include the following notice:

**NOTICE OF DOMESTIC ABUSE PROTECTIONS**

(1) As provided in section 106.50(5m)(dm) of the Wisconsin statutes, a tenant has a defense to an eviction action if the tenant can prove that the landlord knew, or should have known, the tenant is a victim of domestic abuse,

sexual assault, or stalking and that the eviction action is based on conduct related to domestic abuse, sexual assault, or stalking committed by either of the following:

(a) A person who was not the tenant's invited guest.

(b) A person who was the tenant's invited guest, but the tenant has done either of the following:

1. Sought an injunction barring the person from the premises.

2. Provided a written statement to the landlord stating that the person will no longer be an invited guest of the tenant and the tenant has not subsequently invited the person to be the tenant's guest.

¶35    It is undisputed that Marquardt's lease did not include the notice of domestic abuse protections required by WIS. STAT. § 704.14. Thus, the lease was void and unenforceable under WIS. STAT. § 704.44(10) and WIS. ADMIN. CODE § ATCP 134.08(10) if it allowed Koble to terminate Marquardt's tenancy "for a crime committed in relation to the rental property." We agree with Attorney Miller that the lease permitted that result.

¶36    As relevant here, Marquardt's lease stated that "[n]either party may … make [or] knowingly permit use of the premises for an unlawful purpose." The lease further provided that: (1) a tenant's failure to substantially comply with any material provision of the lease constituted a breach; (2) the landlord could terminate the lease based on a breach if notice was given and the breach was not cured within five days; and (3) if a second, similar breach occurred within one year of a breach that had been cured, the landlord could terminate the lease after giving notice.

¶37    We conclude that these provisions would have allowed Koble to terminate Marquardt's lease "for a crime committed in relation to the rental

16

property," contrary to WIS. STAT. § 704.44(10). A tenant who commits or allows a crime to be committed in the rental property has certainly made use of the premises for an unlawful purpose, as prohibited by the lease. And the lease further provides that a breach of its terms gives the landlord grounds to terminate the lease. Although the lease states that the landlord must give the tenant notice of the breach and a five-day period to cure it, it is unclear how a tenant could "cure" a breach that occurred when a crime was previously committed in the rental property. Furthermore, even if a tenant somehow cured such a breach, if a second, similar breach occurred during the subsequent one-year period, the lease would allow the landlord to terminate the tenancy based on that breach without a second opportunity to cure.

¶38 In addition, we note that in the circuit court, Koble admitted in response to Marquardt's request for admission under WIS. STAT. § 804.11(1) that the lease allowed Koble "to terminate the tenancy of a tenant for a crime committed on the rental premises." "Any matter admitted under [§ 804.11] is conclusively established unless the court on motion permits withdrawal or amendment of the admission." Sec. 804.11(2). Koble never moved to withdraw or amend its admission on this point.

¶39 Despite Koble's admission, the circuit court concluded that Marquardt's lease did not "authorize eviction based on the commission of a crime." The court reasoned that the lease did not mention "crime" and instead merely restricted both parties from making or knowingly permitting use of the premises for an unlawful purpose. We reject this reasoning because the term "unlawful" is broader than the term "criminal." While not every unlawful act is a crime, every

17

crime is unlawful.[8] Consequently, under the language of Marquardt's lease, any tenant who committed or allowed a crime to be committed on the premises could be evicted because he or she necessarily would have made use of the premises for an unlawful purpose.

¶40 The circuit court also concluded that the lease's language regarding the use of the rental premises for an unlawful purpose was consistent with WIS. STAT. § 704.05(3), which states, in part, that a tenant "cannot use the premises for any unlawful purpose." Marquardt did not dispute, however, that her lease could prohibit her from using the premises for an unlawful purpose. Instead, Marquardt argued that the relevant language in the lease would allow Koble to terminate her tenancy for a crime committed in the rental property and that the lease did not include the domestic abuse notice required under WIS. STAT. § 704.14. *See* WIS. STAT. § 704.44(10); WIS. ADMIN. CODE § ATCP 134.08(10). Even if the lease was consistent with § 704.05(3), it could still violate § 704.44(10) and § ATCP 134.08(10).

¶41 The circuit court also emphasized that the language in Marquardt's lease regarding the use of the rental premises for an unlawful purpose would not allow Koble to terminate Marquardt's tenancy based on the commission of a crime *of which Marquardt was the victim*. However, neither WIS. STAT. § 704.44(10) nor WIS. ADMIN. CODE § ATCP 134.08(10) requires, as a prerequisite to a rental agreement being void and unenforceable, that the agreement would allow the termination of a tenancy based on the commission of a crime *of which the tenant was the victim*. Instead, both provisions state that a rental agreement is void and

---

[8] For instance, a violation of a municipal ordinance is unlawful and may result in a civil forfeiture, but that violation is not a crime.

unenforceable if it: (1) allows the landlord to terminate the tenancy of a tenant for a crime committed in relation to the rental property; and (2) does not include the notice required by WIS. STAT. § 704.14. *See* § 704.44(10); § ATCP 134.08(10). Because Marquardt's lease satisfied both of these criteria, it was void and unenforceable, regardless of whether it would have allowed the termination of Marquardt's tenancy based on the commission of a crime of which Marquardt was the victim.[9]

¶42 Although Koble admitted in the circuit court that Marquardt's lease allowed it to terminate the tenancy of a tenant for a crime committed on the rental premises, on appeal, Koble disputes that the lease violated WIS. STAT. § 704.44(10) and WIS. ADMIN. CODE § ATCP 134.08(10). In particular, Koble argues that the lease did not "give Koble the automatic authority to terminate the lease if a crime [was] committed on the premises" because the lease gave the tenant the opportunity to cure the violation. We have already explained why the lease's right-to-cure provision does not save the lease from being void and unenforceable under

---

[9] Under WIS. STAT. § 704.44(9), a rental agreement is void and unenforceable if it "[a]llows the landlord to terminate the tenancy of a tenant based solely on the commission of a crime in or on the rental property if the tenant, or someone who lawfully resides with the tenant, is the victim … of that crime." WISCONSIN ADMIN. CODE § ATCP 134.08(9) contains nearly identical language. Unlike these provisions, § 704.44(10) and § ATCP 134.08(10) do not contain any reference to the tenant or any person lawfully residing with the tenant being the victim of a crime.

It is also immaterial that Marquardt was not actually evicted—nor did Koble attempt to evict her—for a crime committed in relation to the rental property. WISCONSIN STAT. § 704.44(10) and WIS. ADMIN. CODE § ATCP 134.08(10) do not state that a rental agreement is void and unenforceable if a landlord *actually terminates* a tenant's tenancy for a crime committed in relation to the rental property and if the rental agreement does not include the required domestic abuse notice. Instead, § 704.44(10) and § ATCP 134.08(10) state that a rental agreement is void and unenforceable if it *allows* a landlord to terminate a tenant's tenancy under those circumstances. *Cf.* ***Baierl v. McTaggart***, 2001 WI 107, ¶22, 245 Wis. 2d 632, 629 N.W.2d 277 (explaining that, for purposes of § ATCP 134.08(3), "the prohibited act is *the inclusion of a clause*" prohibited by that subsection) (emphasis added)).

§ 704.44(10) and § ATCP 134.08(10). *See supra* ¶37. In addition, we note that neither § 704.44(10) nor § ATCP 134.08(10) requires that the landlord's ability to terminate the tenancy must be "automatic."

¶43 Koble also argues that the lease is not void and unenforceable because under WIS. STAT. § 704.17(3m)(b)1.,

> a landlord may, upon notice to the tenant, terminate the tenancy of a tenant, without giving the tenant an opportunity to remedy the default, if the tenant, a member of the tenant's household, or a guest or other invitee of the tenant or of a member of the tenant's household engages in any criminal activity that threatens the health or safety of, or right to peaceful enjoyment of the premises by, other tenants; engages in any criminal activity that threatens the health or safety of, or right to peaceful enjoyment of their residences by, persons residing in the immediate vicinity of the premises; engages in any criminal activity that threatens the health or safety of the landlord or an agent or employee of the landlord; or engages in any drug-related criminal activity on or near the premises.

Koble also observes that under § 704.17(3m)(c), para. (b) "does not apply to a tenant who is the victim … of the criminal activity." Koble then notes that under § 704.17(5)(b), "[p]rovisions in any lease or rental agreement for termination contrary to sub. (3m) are invalid." Koble therefore concludes that Marquardt's lease is "clearly not invalid because the lease is not contrary to" § 704.17(3m).

¶44 This argument is a red herring. Marquardt never argued that the relevant provision of her lease was invalid because it violated WIS. STAT. § 704.17(3m). Rather, she argued that the entire lease was void and unenforceable for violating WIS. STAT. § 704.44(10) and WIS. ADMIN. CODE § ATCP 134.08(10). As Attorney Miller notes, "the inapplicability of one statute prohibiting a certain lease provision does not somehow transform into immunity for any violations of a different statute with a different prohibition or requirement." Stated differently, the

fact that the relevant lease provision may have been valid under § 704.17(3m) has no impact on whether that same provision violated the distinct requirements in § 704.44(10) and § ATCP 134.08(10).

> *B. Based on the parties' arguments, Marquardt is entitled to double damages under WIS. STAT. § 100.20(5), and Attorney Miller is entitled to reasonable attorney fees and costs.*

¶45 Any person who suffers pecuniary loss because of a violation of WIS. ADMIN. CODE ch. ATCP 134 "shall recover twice the amount of such pecuniary loss, together with costs, including a reasonable attorney fee." WIS. STAT. § 100.20(5); ***Shands v. Castrovinci***, 115 Wis. 2d 352, 357, 340 N.W.2d 506 (1983). Attorney Miller contends that in this case, Marquardt's pecuniary loss "consisted of the payments she made under the void and unenforceable lease, including late fees and legal fees."

¶46 When a rental agreement is "void," it is invalid, *see* WIS. STAT. § 704.02, and a "legal nullity," *see **Baierl v. McTaggart***, 2001 WI 107, ¶20, 245 Wis. 2d 632, 629 N.W.2d 277. A void agreement is "[o]f no legal effect." *See Void*, BLACK'S LAW DICTIONARY (11th ed. 2019). According to Attorney Miller, if Marquardt's lease was a legal nullity and had no legal effect, then it follows that Koble was not entitled to any payments under the lease.

¶47 Attorney Miller concedes that WIS. STAT. ch. 704 is "silent" as to the calculation of a tenant's damages when a lease is void and unenforceable. Nevertheless, Attorney Miller asserts that the WCA is informative on this issue because it shares "similar consumer protection goals" with ch. 704. Under the WCA, when a transaction is void, the customer "shall be entitled to retain the goods, services or money received pursuant to the transaction without obligation to pay any

amount" and "shall be entitled to recover any sums paid to the merchant pursuant to the transaction." *See* WIS. STAT. § 425.305(1)-(2).

¶48     Thus, Attorney Miller argues that under the WCA, "if a violation results in voidness, the consumer may keep whatever they bought or leased, and they get all their money back—the violator has no separate quantum meruit claim for the value of anything it provided." Attorney Miller contends that the result should be the same when a rental agreement is found to be void and unenforceable under WIS. STAT. § 704.44(10) and WIS. ADMIN. CODE § ATCP 134.08(10). Attorney Miller also cites Wisconsin's Landlord & Tenant Manual, which states: "If a lease is void or unenforceable, a landlord cannot rely on the lease to claim what the tenant owes. Furthermore, the tenant may be entitled to claim reimbursement for money paid for charges provided for only in the void lease." KRISTIN K. BEILKE ET AL., WISCONSIN LANDLORD & TENANT MANUAL § 8.47 (2d ed. 2023).

¶49     Notably, Koble does not respond to Attorney Miller's argument that, as a result of Koble's violation of WIS. STAT. § 704.44(10) and WIS. ADMIN. CODE § ATCP 134.08(10), Marquardt is entitled to recover all of the payments that she made under the void and unenforceable lease, without any offset for the value of the benefit that she received from living in the rental premises. In particular, Koble fails to develop an argument that the claimed pecuniary loss was not *caused by* Koble's violation of § 704.44(10) and § ATCP 134.08(10). *See* WIS. STAT. § 100.20(5) (permitting a person who has suffered pecuniary loss "because of" a violation of WIS. ADMIN. CODE ch. ATCP 134 to recover double damages, attorney fees, and costs); *see also **Industrial Risk Insurers v. American Eng'g Testing, Inc.**,* 2009 WI App 62, ¶25, 318 Wis. 2d 148, 769 N.W.2d 82 (we will not abandon our neutrality to develop arguments for a party). Under these circumstances, we agree

with Attorney Miller that Koble has conceded his argument regarding Marquardt's pecuniary loss. *See Charolais Breeding Ranches, Ltd. v. FPC Sec. Corp.*, 90 Wis. 2d 97, 109, 279 N.W.2d 493 (Ct. App. 1979) (unrefuted arguments may be deemed conceded).

¶50     Consequently, under WIS. STAT. § 100.20(5), Marquardt is entitled to recover twice the amount of her pecuniary loss—that is, twice the amount of all payments that she made under the void and unenforceable lease. In addition, Attorney Miller is entitled to recover his reasonable attorney fees and costs, including the attorney fees and costs incurred on appeal. *See Shands*, 115 Wis. 2d at 359 ("[A] tenant who has suffered pecuniary loss because of a violation of [WIS. ADMIN. CODE ch. ATCP] 134 shall recover reasonable attorney fees for appellate review undertaken to attack or defend a [circuit] court's decision in the suit.").

## CONCLUSION

¶51     For the reasons stated above, we reverse the circuit court's order. We remand for a determination of Attorney Miller's reasonable attorney fees and costs, and for a determination of the amount of damages that Marquardt is entitled to recover on her void lease claim.[10]

*By the Court.*—Order reversed and cause remanded for further proceedings.

---

[10] Although Attorney Miller has prevailed on appeal, we admonish him for the sarcastic and disparaging tenor of his briefing. We remind Attorney Miller that SCR 62.02 requires judges and lawyers to maintain a cordial and respectful demeanor; to be civil in their dealings with one another; to abstain from making disparaging, demeaning, or sarcastic remarks or comments about one another; and to abstain from any conduct that may be characterized as uncivil, abrasive, abusive, hostile or obstructive. *See* SCR 62.02(1)(a)-(d). We caution Attorney Miller that appellate briefing that disparages either this court or opposing counsel does not constitute effective advocacy.